(No. 35979.—
*In re* J. RAYMOND BODKIN, Attorney, Respondent.

*Opinion filed March 29, 1961.*

J. R. CHRISTIANSON, of Chicago, *amicus curiae.*

FRANCIS J. KENNEDY, of Chicago, for respondent.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The Committee on Grievances of the Chicago Bar Association recommended disbarment of the respondent, J. Raymond Bodkin. However, the Board of Managers of the Chicago Bar Association, sitting as Commissioners of this court, recommended suspension for a period of three years. This review is on respondent's exceptions to the Commissioners' report.

The respondent was suspended from the practice of law by this court on September 16, 1958, for a period of one year. Prior to his suspension, and on August 9, 1958, respondent was retained by a Marie Kubal, who had suffered

an injury to her person the previous day. The matter was not settled until January, 1959, at which time the respondent received $250 as his compensation and $75 which he agreed to pay Dr. P. J. Werner for Marie Kubal's treatment. The physician's bill was not paid until September 11, 1959.

The complaint which was served on respondent on September 8, 1959, charged in substance that notwithstanding respondent's suspension, he represented a client, Marie Kubal, in connection with a personal injury case and negotiated a settlement in January, 1959, for $750, and retained $250 for his services as attorney's fees; that he represented he would pay $75 to Dr. P. J. Werner for his services or that he would return the money to Miss Kubal; that he failed and refused to remit the $75 to Dr. Werner. Thereby he wilfully converted said sum to his own use and by reason of the conversion and his engaging in the practice of law during his suspension from the practice of law, had engaged in acts which are unbecoming to a lawyer and tend to bring the legal profession into disrepute.

The answer of respondent denies that he engaged in the practice of law during his suspension; that the claim of Marie Kubal was commenced by him five weeks before the suspension order and was pursued to completion (during suspension) and that the only reason he completed the matter was that it would not involve litigation; that negotiation was opened with the insurance company adjuster prior to September 16, 1958, and that the reason for its delay in being closed in January, 1959, was because Miss Kubal did not respond to medical treatment as quickly as had been anticipated. The answer further states that in all respects except the Kubal matter, respondent refrained from practicing law in any manner or form whatsoever. By his answer, respondent also admitted that Miss Kubal incurred a bill for $75 for treatment by Dr. P. J. Werner, and that Dr. Werner was to receive his fee, he having advised Miss

Kubal that the doctor would be paid promptly; that he delivered $75 which was at all times available to Dr. Werner, as evidenced by the photostatic copy of the receipt, and denies that he engaged in any unbecoming acts that would tend to bring the legal profession into disrepute.

Three questions are presented to this court. First, did the respondent practice law when he settled a personal injury claim during the time he was suspended from the practice of law? Second, does his conduct during the time of suspension require further discipline? And third, did he convert his client's money when he failed to pay her doctor's bill for a period of more than six months and then only after a complaint was filed against him?

There is no decision in Illinois as to whether or not settlement of a personal injury claim constitutes the practice of law. Each case is largely controlled by its own peculiar facts and it is difficult to state a formula as to what constitutes the practice of law. As we stated in *People ex rel. Illinois State Bar Ass'n* v. *Schafer,* 404 Ill. 45, 50: " 'Practicing law' has been defined as 'Practicing as an attorney or counselor at law, according to the laws and customs of our courts, is the giving of advice or rendition of any sort of service by any person, firm or corporation when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill.' Without adopting that definition, we referred to it as being substantially correct in *People* v. *Peoples Stock Yards State Bank,* 344 Ill. 462."

In *Fink* v. *Peden,* 214 Ind. 584, the court held that a man who undertook to negotiate a settlement with the Pennsylvania Railroad Company for a widow and her children as a result of the death of her husband, an employee of the railroad, where his services were not to be rendered gratuitously, was practicing law.

Bodkin's contention is that he was not practicing law after the insurance company admitted liability for its in-

sured and willingness to pay the claim. His acts after September 16, 1958, he states, required no discretion or legal determination but such acts were administrative or ministerial. He further states that, after the insurance company adjuster said they were willing to pay, his position was the same as that of an adjuster for an insurance company except that he was acting on behalf of a claimant. *Liberty Mutual Insurance Co.* v. *Jones,* 344 Mo. 932, 130 S.W.2d 945, 125 A.L.R. 1149 is cited as authority to place respondent in the same position as an adjuster for an insurance company. However, the court in that case distinguished between services rendered by an insurance adjuster on behalf of his company and services rendered by one who negotiates a claim against the company. There the respondents argued that if a lay adjuster cannot handle a claim for the injured party or the insured it would be unfair to say he can do so for the other party to the controversy—the insurer. The court stated: "The reason why laymen are forbidden to engage in the law business is that it is detrimental to the public interest for them to represent themselves to the public as being qualified to do that business when they are not, thereby ensnaring the public and spreading error broadcast * * * On the other hand, appellants' lay claim adjusters work only for their several employers, who hire and retain them with their eyes open. When they deal with claimants it is on an adversary basis, not a representative basis implying a fiduciary relation."

The argument of the respondent based upon *In re Eastern Idaho Loan and Trust Co.* 49 Idaho 280, 288 Pac. 157, fails to impress us. Representing a claimant in a personal injury suit requires the determination of the questions of liability and damages and is practicing law. Respondent was retained as an attorney and paid attorney's fees. Negotiations extended into the period of suspension and the question of the seriousness of the injury and the amount to be paid in damages was in doubt during this period. The answer

alleged that negotiations were not closed until January 1959, because Miss Kubal did not respond to medical treatment as quickly as had been anticipated. Respondent in testifying as to this matter said Miss Kubal was a "bleeder." It is obvious that settling a case, under these circumstances, required legal skill. It is mere sham of one who has taken the attorney's oath to contend that the acts during suspension were clerical, administrative, and ministerial only.

Although there are no Illinois cases in which a lawyer under suspension was further disciplined because of practicing law while suspended, this court has found a disbarred lawyer guilty of contempt, as a layman, for practicing law after disbarment. (*People ex rel. Chicago Bar Ass'n* v. *Barasch,* 406 Ill. 253.) Also, this court has disciplined a former member of the bar. (*People ex rel. Chicago Bar Ass'n* v. *Tinkoff,* 399 Ill. 282; *People ex rel. Chicago Bar Ass'n* v. *Novotny,* 386 Ill. 536.) Without citation, it would seem to be reasonable and just that a lawyer under suspension may be further disciplined for practicing law during the period of suspension. Respondent's previous suspension has not corrected his attitude toward the practice of law as a profession of high ethics and integrity. Further discipline is necessary.

As to the charge of conversion of the $75 doctor fee to respondent's own use, it is clear that the $75 was received by respondent in January, 1959, and that he did not pay it to Dr. Werner until after September 11, 1959, at least three days after the complaint was served upon him. It is true that the burden of proof is on those making the charges of misconduct against an attorney and that clear, satisfactory evidence must be proved to suspend an attorney. Respondent claims that Dr. Werner's testimony is far from convincing. Dr. Werner's testimony is conflicting with Bodkin's testimony particularly as to whether or not Bodkin attempted to pay the doctor prior to September 11, 1959. In addition to the testimony of the doctor and respondent,

464

the commissioners also had the testimony of Marie Kubal and her brother, Frank Kubal, relative to the doctor bill. Their testimony was very damaging to the respondent. This court has also noted that respondent attached the doctor's receipt, dated July 25, 1959, to his answer. Actually, the receipt was not given until sometime after September 8, 1959, (the date of service of the complaint on respondent). The doctor and respondent agree, in their testimony, that the receipt was dated back to July 25, 1959, but they disagree on the reason as to why the receipt was dated back. Even though the $75 was paid the doctor, after the complaint was filed, respondent's conduct involves a flagrant violation of his duty. *In re Abbamonto,* 19 Ill.2d 93.

In conclusion, we cannot say that the evidence is not sufficiently clear and convincing to sustain the findings of the Commissioners. Respondent's acts in settling a personal injury case after suspension did constitute the practice of law, and these acts require further discipline. The testimony also justifies the finding of conversion of the $75 doctor fee. Having considered the recommendation of the commissioners and considering all the circumstances of the case, we suspend respondent from the practice of law for a period of three years.

*Respondent suspended.*