People of the State of Illinois, Appellee, v. Frank J. Cullotta, Appellant.

Gen. No. 64-11.

Second District.
May 19, 1964.
Rehearing denied June 2, 1964.

Joseph I. Bulger, G. J. Devanna and George E. Graziadei, all of Chicago, for appellant.

William G. Clark, Attorney General, of Springfield (William J. Bauer, State's Attorney, of Wheaton, Fred G. Leach, and E. Michael O'Brien, Assistant Attorneys General, Carl F. J. Henninger, Assistant State's Attorney, of counsel), for appellee.

ROETH, JUSTICE.

Defendant was convicted in a jury trial of the crime of burglary and was sentenced to the penitentiary for a term of from 3 to 8 years. This appeal followed. The only question presented for review is whether or not the evidence established defendant's guilt beyond a reasonable doubt. A determination of this question requires a consideration of the evidence.

The burglary in question occurred in the early morning hours of December 20, 1961. The People's evidence discloses that at about 12:30 a. m. that morning, a police officer by the name of Peter Blood was patrolling a shopping center in the Village of Bensenville. Among other business establishments located in the shopping center were a Laundromat and TV-Radio shop which were adjacent to each other. The officer drove his patrol car along the front of the Laundromat and TV-Radio shop with the driver's side alongside a sidewalk which was located in front of both establishments. The Laundromat was a 24-hour business and the interior was well lighted. As he drove past the Laundromat he noticed two men sitting inside. One of these men he described as thin, thin faced, about 5′ 9″ in height and weighing about 155 pounds. The other man he described as being heavy set, weighing about 200 pounds, black hair, wearing horn rimmed glasses and about 5′ 10″ in height. The two men appeared to be talking to each other. The officer again patrolled the area at 1:30 a. m. and testified that the same two men were still in the Laundromat. At 3:40

a. m. the officer drove along the side of the Laundromat and saw TV sets and radios on the floor. Nobody appeared to be present inside the building. He immediately radioed the police station and Officers McGann, Rossol and Bieneman arrived shortly thereafter. An inspection of the premises disclosed several important things. First, there was a hole in the wall between the Laundromat and the TV-Radio shop. This hole had been cut through the dry wall plaster board separating the Laundromat and the TV-Radio shop. It was olive shaped, between the studding, and approximately 16″ x 22″ in size. The more slender officers could get through the hole but the heavier built could not. Second, there was a car parked at the rear of the Laundromat with 4 clock radios in the back seat and 2 TV sets in the trunk. There were additional radios and TV sets on the floor of the Laundromat near the hole in the wall and the door. These TV sets weighed 65 pounds each and were 10″ deep, 18″ high and 20″ to 21″ wide. None of them were scratched or damaged. Third, it having snowed sometime before 3:40 a. m., there were numerous footprints leading from the door of the Laundromat to the automobile at the rear. Fourth, there was a single set of footprints leading away from the automobile to York Road, a street in the Village, which could not be followed beyond York Road. Fifth, in the Laundromat certain tools and a saw were found and finally, a person by the name of Phillip Manzella was discovered hiding behind some dryers. By his own admissions, Manzella cut the hole in the wall, could slip through it, carried TV sets and radios out of the shop and owned the car.

Officer Bieneman was also on patrol duty on the night in question. He testified that he passed the Laundromat at about 1:00 a. m. and again at 2:30 a. m. On both occasions he saw a single man sitting

182

in the Laundromat who he described as being stocky, dark complexioned, dark hair and wearing heavily rimmed glasses.

On December 21, 1961, the defendant was arrested by the Elmwood Park Police at the request of the Bensenville Police. He was taken to the Bensenville Police Station. There Officer Blood identified him as one of the men he had seen in the Laundromat and the one he had described as being the heavier of the two. Officer Bieneman recognized him as the single man he had seen sitting in the Laundromat. Both identified the defendant in open court on the trial as being one of the men and the man they had respectively seen in the Laundromat.

The defendant's defense was an alibi that he was not at the Laundromat at the time in question but was at his mother's home where he lived, asleep in bed. He testified that he was home on December 19, 1961, until about 7:00 p. m. He then drove his mother to a shopping center where they remained until 9:30 p. m. Upon return to his home, he took a bath, watched TV until 11:30 p. m., when he went to bed and to sleep. He got up at 9:30 a. m. or 10:00 a. m. the next morning and did not leave the house in the interim. He testified he had known Manzella for about 5 years but hadn't seen him for about 2 years. At the time of the incident in question he had been unemployed for about 1½ months. The mother of defendant corroborated the testimony of the defendant above set out.

Manzella testified for the defendant. He testified that he had committed the burglary and was alone at the time. He testified he had been indicted with defendant in this case, had plead guilty and was waiting for disposition of his case. He specifically denied that the defendant was with him at the time in question. However, on rebuttal Manzella was impeached by the testimony of a Police Lieutenant Garcia, who testified

183

■■■■■■■■■■■■■■

that while at the Laundromat, Manzella had told him that defendant was with him and that the Elmwood Park Police would know defendant.

Two things stand out in Manzella's testimony. First, he had cased the Laundromat two weeks before the burglary. He agrees with defendant that they had known each other for 5 years but he says he had seen defendant about *a week* before the burglary and not *2 years* before as defendant said. Second, Manzella says there was another man in the Laundromat talking to him for some 45 minutes and that this man came in after he, Manzella, had been there for some time. He described this man as being 5′ 8″ tall, weighing 200 pounds, with dark hair and wearing glasses with a frame made of plastic.

■ ■ Basically it is the contention of counsel for defendant that since no one saw defendant commit the crime, or flee from the scene, or have in his possession any of the stolen goods or burglar tools, the conviction must rest entirely upon what they term as the dubious identification by the police officers and circumstantial evidence. It is true as contended by counsel for defendant that the Supreme Court has seen fit to reverse cases where it appears from the whole record that there is a reasonable doubt as to the identification of the defendant as a participant in the crime. Typical of these cases are People v. McGee, 21 Ill2d 440, 173 NE2d 440, and People v. Gold, 361 Ill 23, 196 NE 729, both cited by counsel for defendant. These cases and others which can be found are cases wherein the accused is seen under adverse lighting conditions, or for just fleeting moments or where identification is largely made on the basis of clothing, etc., or any combination of the foregoing. In such cases the courts have said that the circumstances offered great opportunity for mistake.

Such, however, is not the record in the case at bar. Both Officers Blood and Bieneman observed the defendant under well lighted conditions when they were only 5½ feet away from him. They positively identified him as being in the Laundromat on the morning in question, both at the Police Station and upon the trial. A positive identification by only one credible witness is sufficient to convict, even though his testimony is contradicted by the accused. People v. Hicks, 22 Ill2d 364, 176 NE2d 810. Under such circumstances the issue is not the sufficiency of the evidence, but the credibility of the witnesses and the weight to be accorded to their testimony. This is primarily a function of the jury. People v. Mercado, 26 Ill2d 244, 186 NE2d 256.

There was ample evidence to justify the jury in finding defendant guilty. Accordingly the judgment of the Circuit Court of DuPage County will be affirmed.

Affirmed.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.