351 A.2d 229

**DAUPHIN COUNTY BAR ASSOCIATION by J. Thomas Menaker, Trustee ad litem, Plaintiff-Appellee,**

v.

**Augustus F. MAZZACARO, a/k/a A. "Gus" Mazzacaro, Defendant-Appellant.**

Supreme Court of Pennsylvania.

Argued May 6, 1975.

Decided Jan. 29, 1976.

546

George W. Gekas, Melman, Gekas & Nicholas, Harrisburg, for appellant.

J. Thomas, Menaker, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

This is an appeal from a final decree of the Court of Common Pleas of Dauphin County, enjoining Augustus F. Mazzacaro, a licensed casualty adjuster, from representing tort claimants in pursuing damage claims against tort-feasors or their insurers for personal liability and property damages.[1] The injunction was sought by the Dauphin County Bar Association against appellant on the grounds that such third-party[2] representation exceeds appellant's authority under the Public Adjuster Act, Act of April 25, 1921, P.L. 276, § 1, as amended, 40 P.S. § 301, and constitutes unauthorized practice of law within the meaning of the Act of July 12, 1935, P.L. 708, § 1, 17 P.S. § 1610. We agree and affirm the decree below.

The nature of Mazzacaro's challenged practice may be briefly stated. As part of his casualty adjustment practice, Mazzacaro has solicited the claims of injured parties against alleged tort-feasors who are insured, or their insurers. For a contingent fee of ten to twenty per cent of any resultant settlement, Mazzacaro investigates the accident, estimates the dollar amount of damages sustained, writes a demand letter to the party from whom

---

1. This direct appeal is taken pursuant to the Appellate Court Jurisdiction Act of 1970, P.L. 673, No. 223, § 202, 17 P.S. § 211.-202(4).

2. "Third-party" as used in the proceedings in the trial court and in this opinion means a person who has sustained an injury at the hands of another person who is insured for the resultant loss. It is used in contradistinction to the "insured" and "insurer".

recovery is sought and attempts to negotiate a settlement. Mazzacaro insists that this representation is undertaken on the assumption that liability exists and that all that is at stake is agreement on the amount of damages; he states that when the alleged tort-feasor or insurer contests liability, he voluntarily withdraws his services and recommends that a lawyer be consulted. Significantly, when such withdrawal occurs, Mazzacaro receives no compensation from the claimant. Mazzacaro contends that his representation of third-party claimants under the above-described circumstances is authorized by his public adjuster's license, issued pursuant to the Public Adjuster Act, Act of 1921, *supra*, 40 P.S. §§ 301, 302. In the alternative, he asserts that since his representation of the injured person is predicated on the assumption of liability by the person against whom the claim is made, it does not involve the exercise of legal judgments or the practice of law. Lastly, appellant urges that we reverse the decree below on the ground that the statute proscribing the unauthorized practice of law is unconstitutionally vague, and therefore, unenforceable. We find no merit in these contentions.

## I.

Mazzacaro has been licensed by the Pennsylvania Insurance Commission as a "public adjuster". Public Adjuster Act, *supra*, § 3, 40 P.S. § 302. The scope of his authority under this license is controlled by the definition of "public adjuster" as set forth in Section 301 of the statute:

> "The term, 'public adjuster,' as used in this act, shall include every person, co-partnership, association, and corporation advertising, soliciting business, or holding himself or itself out to the public, as an adjuster of claims for losses or damages arising out of policies of insurance, surety, or indemnity upon property, persons, or insurable business interests within

this Commonwealth, and receiving any compensation or reward for the giving of advice or assistance to the assured in the adjustment of claims for such losses, or who for compensation or reward, whether by way of salary or commission or otherwise, directly or indirectly, solicit business, investigate or adjust losses, or advise the assured with reference to claims for losses, on behalf of any other person, partnership, association, or corporation engaged in the business of adjusting losses."

Appellant reads this provision as defining two types of public adjusters—(1) those who adjust "claims for losses or damages arising out of policies of insurance . . . upon property [or] persons . . ."; and (2) those who for compensation give "advice or assistance to the *assured* in the adjustment of claims . . ." (emphasis supplied). Because third-party claimants seek to recover claims arising out of policies of insurance, appellant urges that the definition in the first numbered clause confers authority under his license to undertake third-party representation.

■ Appellant's argument, however, ignores the grammatical construction of Section 301. The two clauses which he attempts to isolate are connected by the conjunctive "and", not by the disjunctive "or". We read this section as describing and defining but one type of public adjuster, the definition containing several distinct, but necessary, elements. Thus we reject the view that clause (1) in the preceding paragraph confers authority to represent third persons.

■ Appellant also contends that the term "assured" in Section 301 should be construed to mean "a party making a claim for damages arising out of a policy of insurance." Under this reading, either of the two clauses quoted above, or both taken together, would confer the authority to represent third persons. There is however,

no merit to this construction. The term "assured" is generally considered to be synonymous with the term "insured," viz., the person who is subject to the risk of loss which the policy of insurance has been issued to protect against. See, e. g., *Connecticut Mutual Life Insurance Co. v. Luchs*, 108 U.S. 498, 2 S.Ct. 949, 27 L.Ed. 800 (1883); *Brockway v. Connecticut Mutual Life Insurance Co.*, 29 F. 766 (W.D.Pa.1887); *McBroome-Bennett Plumbing, Inc. v. Villa France Inc.*, 515 S.W.2d 32 (Tex. Civ.App.1974); Black's Law Dictionary 158 (Rev. 4th ed. 1968); Webster's New International Dictionary 168 (2d ed., unabridged 1942). There is nothing on the face of this statute which would indicate that the legislature intended to deviate from this commonly accepted meaning. Indeed, it seems highly unlikely that the legislature would have chosen such a narrowly defined term to convey the broad meaning appellant would have the term bear. Accordingly, we reject appellant's proposed construction.[3]

■ We therefore conclude that Mazzacaro's public adjuster license does not confer authority to negotiate settlements on behalf of injured claimants against alleged tort-feasors or their insurers.

II.

■ Having decided that the public adjuster's license which he holds does not authorize appellant to represent third-party claimants, we must next consider whether such representation is enjoinable as constituting the un-

---

**3.** Appellant also urges that we follow an informal opinion of a former counsel to the Pennsylvania Insurance Commission which purportedly concluded that the public adjuster's license authorizes representation of third-party claims. The chancellor, however, discounted the testimony of the official in question and concluded that there has been no official agency interpretation of the Act. A review of the record indicates that this conclusion was justified. As a consequence, it will not be disturbed on appeal. See *Snow v. Corsica Construction Co.*, 459 Pa. 528, 329 A.2d 887, 889 (1974).

authorized practice of law.[4]  A resolution of this question requires an understanding of the purpose behind the proscription of unauthorized practice and the public interest such proscription is designed to serve.

When a person holds himself out to the public as competent to exercise legal judgment, he implicitly represents that he has the technical competence to analyze legal problems and the requisite character qualifications to act in a representative capacity.  When such representations are made by persons not adequately trained or regulated, the dangers to the public are manifest:

> "A layman who seeks legal services often is not in a position to judge whether he will receive proper professional attention.  The entrustment of a legal matter may well involve the confidences, the reputation, the property, the freedom, or even the life of the client.  Proper protection of members of the public demands that no person be permitted to act in the confidential and demanding capacity of a lawyer unless he is subject to the regulations of the legal profession."  EC 3–4, Code of Professional Responsibility, adopted by the Supreme Court of Pennsylvania, February 27, 1974, 455 Pa. —— (1974).

Indeed, "the bar itself actually arose out of a public demand for the exclusion of those who assume to practice

---

**4.** The practice of law by a person who is not a member of the bar is by statute in Pennsylvania a misdemeanor.  Act of July 12, 1935, P.L. 708, § 1, 17 P.S. § 1610.  The fact that the unauthorized practice of law is a criminal offense does not, however, deprive a court of equity of jurisdiction to enjoin ongoing unauthorized practice.  It is well settled that the criminal remedy is inadequate to protect the public from continuing unauthorized practice and that an injunction may properly issue. *Shortz v. Farrell*, 327 Pa. 81, 193 A. 20 (1937); *Childs v. Smeltzer*, 315 Pa. 9, 171 A. 883 (1934); American Bar Foundation, Unauthorized Practice Handbook 99 (J. Fischer & D. Lachman eds. 1972); Dobbs, Remedies 117 (1973); Note, Remedies Available to Combat the Unauthorized Practice of Law, 62 Col.L.Rev. 501, 504 (1962); cf. *Everett v. Harron*, 380 Pa. 123, 110 A.2d 383 (1955); *Boggs v. Werner*, 372 Pa. 312, 94 A.2d 50 (1953).

law without adequate qualifications therefor." Vom Baur, *An Historical Sketch of the Unauthorized Practice of Law*, 26 Unauthorized Practice News 1, 2 (Fall 1958). To practice law a person must demonstrate a reasonable mastery of legal skills and principles, be a person of high moral character and maintain a continuing allegiance to a strict code of professional conduct. See, e. g., Rules 7, 8, 9, 12, 14 and 17–3 of the Rules of the Supreme Court of Pennsylvania.[5] These stringent requirements are intended to protect and secure the public's interest in competent legal representation. It is to guard against the impairment of this interest that the practice of law by persons who are not authorized to do so is forbidden. The paramount position of the public interest was recognized by this Court, speaking through Mr. Justice (later Chief Justice) STERN in *Shortz v. Farrell*, 327 Pa. 81, 193 A. 20 (1937):

> "While, in order to acquire the education necessary to gain admission to the bar and thereby become eligible to practice law, one is obliged to 'scorn delights, and live laborious days,' the object of the legislation forbidding practice to laymen is not to secure to lawyers a monopoly, however deserved, but, by preventing the intrusion of inexpert and unlearned persons in the practice of law, to assure to the public adequate protection in the pursuit of justice, than which society knows no loftier aim." 327 Pa. at 91, 193 A. at 24.

See also *Childs v. Smeltzer*, 315 Pa. 9, 171 A. 883 (1934); Vom Baur, *An Historical Sketch of the Unauthorized Practice of Law, supra*; Note, *The Unauthorized Practice of Law by Laymen and Lay Associations*, 154 Cal.L. Rev. 1331 (1966).

---

5. In Pennsylvania, the Supreme Court is vested by the Constitution with the power to prescribe general rules for admission to the bar and to practice law. Constitution of 1968, Art. V, Sec. 10(c).

Marking out the abstract boundaries of legal practice would be an elusive, complex tax "more likely to invite criticism than to achieve clarity." *Shortz v. Farrell, supra*, 327 Pa. at 84, 193 A. at 21. The threads of legal consequences often weave their way through even casual contemporary interactions. There are times, of course, when it is clearly within the ken of lay persons to appreciate the legal problems and consequences involved in a given situation and the factors which should influence necessary decisions. No public interest would be advanced by requiring these lay judgments to be made exclusively by lawyers. Where, however, a judgment requires the abstract understanding of legal principles and a refined skill for their concrete application, the exercise of legal judgment is called for. *Shortz v. Farrell*, 327 Pa. 81, 85, 193 A. 20, 21 (1937). While at times the line between lay and legal judgments may be a fine one, it is nevertheless discernible. Each given case must turn on a careful analysis of the particular judgment involved and the expertise that must be brought to bear on its exercise. With these general principles in mind we turn to the judgments involved in Mazzacaro's third-party claimant representation.

■ Mazzacaro contends that the technical skills of damage valuation and settlement that he performs for third-party claimants have traditionally been performed in the adjustment of claims on behalf of insured claimants against their own insurers; that the performance of these services has always been considered to involve the exercise of lay judgments; that the nature of these judgments does not change merely because the judgments are exercised on behalf of third-party claimants; that fault, the only possible legal issue that could arise as to these claimants, is uncontested in the claims that he handles; and that he is never, therefore, required to make a legal assessment of the claim and accordingly cannot be said to be engaged in the practice of law. Mazzacaro's con-

tentions, however, *ignore the vital role that legal assessments play in the negotiation process* between a victim of an injury and an alleged tort-feasor or his insurer.

While the objective valuation of damages may in uncomplicated cases be accomplished by a skilled lay judgment, an assessment of the extent to which that valuation should be compromised in settlement negotiations cannot. Even when liability is not technically "contested", an assessment of the likelihood that liability can be established in a court of law is a crucial factor in weighing the strength of one's bargaining position. A negotiator cannot possibly know how large a settlement he can exact unless he can probe the degree of unwillingness of the other side to go to court. Such an assessment, however, involves an understanding of the applicable tort principles (including the elements of negligence and contributory negligence), a grasp of the rules of evidence, and an ability to evaluate the strengths and weaknesses of the client's case vis a vis that of the adversary. The acquisition of such knowledge is not within the ability of lay persons, but rather involves the application of abstract legal principles to the concrete facts of the given claim. As a consequence, it is inescapable that lay adjusters who undertake to negotiate settlements of the claims of third-party claimants must exercise legal judgments in so doing.[6] It has been well said that

"[t]he conduct of litigation is by no means all of legal practice. A lawsuit is but one process of settling

6. The public interest is equally threatened by another factor. Mazzacaro is not bound by a reviewable code of professional ethics designed to deter him from the temptations of self-interest which can frequently arise in the course of legal representation. Yet, such temptations clearly inhere in Mazzacaro's contingent fee arrangement with claimants. Mazzacaro receives compensation only if *he* effects a settlement. As a consequence he can reject an unfair settlement offer and recommend litigation only at the expense of his own fee. Unlike a lawyer, however, he is not subject to disciplinary sanctions designed to protect the public from the dangers inherent in such temptations. Compare Rule 17–3 of the Rules of the Supreme Court of Pennsylvania, adopted March 21, 1972, effective July 1, 1972, 446 Pa. xxiii (1972).

an issue of legal right and wrong. Many are disposed of without suit. But the disposition of such issues for others, by advice and negotiation, for hire, is as much the practice of law as though process and pleadings, with or without trial, were necessary. Counsel as to legal status and rights, and conduct in respect thereto, are as much a special function of the English solicitor and the American lawyer as diagnosis, prognosis, and prescription are in the special field of medicine."

*Fitchette v. Taylor*, 191 Minn. 582, 254 N.W. 910, 911 (1934).

In sum, we conclude that such third-party claimant representation by lay adjusters constitutes unauthorized practice of law. The majority of courts that have confronted this problem are in accord. J. Appleman & J. Appleman, Insurance Law and Practice, § 8649 (1968). See, e. g., *Wilkey v. State*, 238 Ala. 121, 189 So. 198 (1939); *Meunier v. Bernich*, La.App., 170 So. 567 (1936); *In re Bodkin*, 21 Ill.2d 458, 173 N.E.2d 440 (1961); *Fitchette v. Taylor*, 191 Minn. 582, 254 N.W. 910 (1934).[7]

**7.** Appellant argues that, by logical implication, a holding such as we make today invalidates the long-standing use of lay adjusters by insurance companies in negotiating settlements with third-party claimants. We are not persuaded that such a result follows. The insurance company adjuster is an agent of the company hired to investigate and evaluate claims being made against the company. He does not hold himself out to the public as competent to represent their interests and indeed, only deals with the public from a plainly adversary posture. In his dealings with his employer he works as an adjunct to a legal department or a lawyer representing the insurer and as a consequence is not required by the nature of his undertaking to exercise any independent legal judgments. Courts which have been called upon to do so have drawn the distinction we suggest. Thus the Supreme Court of Missouri has said:

"Appellants [insurance carriers] answer that the insurance corporation can only act through human agency, that it is not the client of its salaried employees; and that to be engaged in the law business, as the very term implies, they *must hold themselves out to the public* as being engaged in the business of settling claims. . . .

"The question is difficult, but we have come to the conclusion that appellants are correct in this contention. The reason

## III.

■ The unauthorized practice of law statute proscribes, upon penalty of fine or imprisonment, the "practice of law" by one not "a member of the Bar." Act of July 12, 1935, P.L. 708, § 1, 17 P.S. § 1610. Mazzacaro claims that this statute "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application," *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926), and thus offends the due process mandate of the Constitution of the United States and of Pennsylvania. Such a claim is misplaced. Mazzacaro is *not* here being criminally prosecuted under the statute for his prior conduct. Rather, he is being *prospectively* restrained from engaging in a clearly specified type of conduct—representation of third-party claimants. The injunction has been issued, not as a punishment for Mazzacaro's past practices, but to restrain his continuing practice in order to protect against future harm to the public welfare. The injunction provides Mazzacaro with a sufficiently definite notice of the standard to which his conduct must

why laymen are forbidden to engage in the law business is that it is detrimental to the public interest for them to represent themselves to the public as being qualified to do that business when they are not, thereby ensnaring the public and spreading error broadcast. . . .

"On the other hand, appellants' lay claim adjusters work only for their several employers, who hire and retain them with their eyes open. When they deal with claimants it is on an adversary basis, not a representative basis implying a fiduciary relation."

*Liberty Mutual Insurance Company v. Jones,* 344 Mo. 932, 130 S. W.2d 945, 960 (1939). It is presumably for these reasons that the legislature has not seen the necessity of subjecting insurance company adjusters to a licensing requirement of any sort and has specifically excluded them from the scope of the Public Adjuster Act. Act of 1921, *supra,* 40 P.S. § 301. We need not here decide, however, whether representation by insurance company adjusters can constitute the unauthorized practice of law. It is sufficient to say that the two cases are distinct.

conform in the future. He cannot circumvent this notice by attacking the proscriptions of a criminal statute under which he is not being prosecuted. See *Commonwealth of Pennsylvania v. Brown,* 260 F.Supp. 323, 356 (E.D.Pa.1966), vacated and remanded on other grounds, 373 F.2d 771 (3d Cir. 1967). Note, *Due Process Requirements of Definiteness in Statutes,* 62 Harv.Law Rev. 77, 79 (1940).

Decree affirmed. Costs on appellant.

MANDERINO, J., did not participate in the consideration or decision in this case.

NIX, J., concurs in the result.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice (dissenting).

I dissent from the holding of the majority because this case is not ripe for decision by this or any other court of the Commonwealth. The plaintiff in this case seeks to prevent the defendant from adjusting the claims of "third parties" against insurance companies. Defendant claims that his license permits him to do so. If defendant is acting beyond the scope of his license, there is an administrative remedy: a complaint may be filed with the Insurance Commission seeking to have defendant's license revoked.* As Mr. Justice Pomeroy stated in *Lilian v. Commonwealth,* 467 Pa. ——, ——, 354 A.2d 250, —— (1976) [J–515 1974],

"Where such an administrative remedy is statutorily prescribed the general rule is that a court—be it a

* The Insurance Commissioner is empowered to revoke the license of and fine any public adjuster who abuses his license. Act of April 25, 1921, P.L. 276, § 6, as amended Act of June 22, 1931, P. L. 605, § 7, 40 P.S. § 306 (1971).

Even if this is not an exclusive statutory remedy, it is clear that the exercise of equity jurisdiction is not appropriate at this time.

**558**

court of equity or a court of law—is without jurisdiction to entertain the action. See, *e. g., DeLuca v. Buckeye Coal Company,* 463 Pa. 513, 345 A.2d 637 (1975); *West Homestead Borough School District v. Allegheny County Board of School Directors,* 440 Pa. 113, 269 A.2d 904 (1970); *Commonwealth v. Glen Alden Corp.,* 418 Pa. 57, 210 A.2d 256 (1965). Strict compliance with the statutory procedure thus established is the norm."

I see no reason to depart from well-established procedure in this case.