12 P.3d 214

**In the Matter of a Former Member of
the State Bar of Arizona, Frederick
C. CREASY, Jr., Respondent.**

No. SB–96–0043–D.

Supreme Court of Arizona.

Oct. 17, 2000.

State Bar of Arizona, by Yigael M. Cohen, Phoenix, Attorney for State Bar.

Frederick C. Creasy, Jr., Scottsdale, Pro Se.

## OPINION

FELDMAN, Justice.

¶ 1 This court disbarred Frederick C. Creasy, Jr. on September 16, 1996, for a number of violations of the Code of Professional Conduct and other Rules of the Supreme Court. The most serious involved failure to properly maintain client funds entrusted to him on two separate occasions, failure to adequately supervise a non-lawyer, and failure to assist in the State Bar's investigation of these matters. In the eleven years prior to his disbarment, Creasy received six informal reprimands from the State Bar.

¶ 2 On April 14, 1999, the State Bar received a report from attorney William Shrank regarding Creasy's possible violations of the disbarment order. The submission included the transcript of the sworn statement of a witness taken in what is described in the record as a private arbitration matter involving a claim for underinsured motorist benefits made by Sterling K. Smith against his insurer, USAA Casualty Insurance Company. Smith's USAA policy required him to submit this disputed claim to arbitration.

¶ 3 Along with his wife, Marilyn Creasy, a certified public adjuster and owner of The Legal Shoppe, Creasy "represented" Smith in this arbitration. Shrank represented USAA. At the time of the accident with the underinsured motorist, Smith evidently had

some preexisting injuries caused by industrial accidents and covered under workers' compensation. Creasy sought to establish that the automobile accident, rather than the industrial problems, caused specific injuries.[1] During a sworn statement of Dr. Dennis Crandall, Smith's treating physician, and over Shrank's objections, Creasy extensively and probingly examined Dr. Crandall concerning Smith's injuries.

¶ 4 Based on Creasy's appearance at and actions during the sworn statement, the State Bar filed a petition asking this court for an order directing Creasy to appear and show cause why he should not be held in contempt for violating the 1996 disbarment order by engaging in the practice of law. Creasy appeared in response to our order and the issues were briefed and argued.

¶ 5 Creasy, no longer a member of the bar, contests the jurisdiction of this court to regulate the actions of a non-lawyer. He also denies that he practiced law when he examined Dr. Crandall, arguing that actions that constitute the practice of law before a court are not the practice of law when done in the context of a private arbitration proceeding. Finally, he contends that because he was employed by an insurance adjuster licensed under A.R.S. § 20–281 (1990), the Arizona Department of Insurance has sole jurisdiction to regulate his conduct in this matter. We disagree with all three of his submissions.

## DISCUSSION

### A. Jurisdiction

 ¶ 6 We first address Creasy's argument that this court lacks jurisdiction over him because he is a non-lawyer. The argument is without merit. As we have previously said:

Article III of the Arizona Constitution creates the judicial branch of government, separate and distinct from the other branches.

---

1. Although the State Bar did not see fit to include a complete transcript of the sworn statement, we infer that Attorney Shrank tried to

establish that Smith's injuries were attributable to the previous industrial problems.

\* \* \*

This court has long recognized that under article III of the Constitution "the practice of law is a matter exclusively within the authority of the Judiciary. The determination of who shall practice law in Arizona and under what condition is a function placed by the state constitution in this court."

*In re Smith,* 189 Ariz. 144, 146, 939 P.2d 422, 424 (1997) (quoting *Hunt v. Maricopa County Employees Merit Sys. Comm'n,* 127 Ariz. 259, 261–62, 619 P.2d 1036, 1038–39 (1980) (citations omitted)).

¶ 7 The court's authority over the practice of law is also based on the creation of an integrated judicial department and the revisory jurisdiction of this court as provided in article VI, sections 1 and 5(4) of the Arizona Constitution. *See Smith,* 189 Ariz. at 146, 939 P.2d at 424. Prior to 1985, the Arizona Legislature prohibited the practice of law by unlicenced persons. *See generally* A.R.S. tit. 32, ch. 2. Effective January 1, 1985, however, the entire title regulating attorneys was repealed; since then the practice of law has been under the exclusive regulatory jurisdiction of this court, governed by the Supreme Court Rules, in particular Rule 31(a)(3). *See Marchant v. U.S. Collections West, Inc.,* 12 F.Supp.2d 1001, 1005 (D.Ariz. 1998) (applying Arizona law to hold that debt collector's application for writ of garnishment was unauthorized practice of law). This constitutional power to regulate the practice of law extends to non-lawyers as well as attorneys admitted to bar membership. *See* Rule 46(b); *Marchant,* 12 F.Supp.2d at 1005 (citing *Anamax Mining Co. v. Arizona Dep't of Econ. Sec.,* 147 Ariz. 482, 484–85, 711 P.2d 621, 623–24 (App.1985)) (prohibiting corporate officer or employee from representing corporate employer before the Department of Economic Security).

¶ 8 The facts of this case do not require us to determine the extent of our power to regulate "practitioners" who are not and have never been lawyers. In the situation presented here, our rules specifically apply to both active lawyers and those who have been disbarred. Rule 31(a)(3) states:

*Privilege to practice.* Except as hereinafter provided in subsection 4 of this section (a), no person shall practice law in this state or hold himself out as one who may practice law in this state unless he is an active member of the state bar, and no member shall practice law in this state or hold himself out as one who may practice law in this state, while *suspended, disbarred, or on disability inactive status.*

(Emphasis added.) We see no reason why we would have jurisdiction over lawyers and not over disbarred lawyers like Creasy. Creasy's case actually presents an even stronger situation for jurisdiction than that of a person never admitted to the bar. On admission, Creasy submitted himself to the authority of the State Bar and this court. He is still bound by the restrictions imposed on him by this court's disbarment order, made under Rule 31, which explicitly prohibits a disbarred lawyer from continuing or resuming practice. His expulsion from the bar in no way frees him from these restrictions. It would be strange doctrine that as a result of being disbarred, a lawyer may not only resume practice but be free of the obligations imposed on lawyers who have not been disbarred.

¶ 9 Given our authority over the practice of law and those who have been admitted to the bar, we conclude that we have continuing jurisdiction to prevent Creasy from resuming the practice of law. We turn, then, to the question of whether he was engaged in the practice of law.

**B. The practice of law**

¶ 10 Creasy argues that his actions during the private arbitration proceeding— unconnected to any pending judicial matter— do not constitute the practice of law. We long ago defined the practice of law as

those acts, whether performed in court or in the law office, which lawyers customarily have carried on from day to day through the centuries constitute the practice of law. Such acts ... include rendering to another *any other advice or services* which are and have been customarily given and performed from day to day in the ordinary

practice of members of the legal profession. . . .

*State Bar of Arizona v. Arizona Land Title & Trust Co.,* 90 Ariz. 76, 95, 366 P.2d 1, 14 (1961) (emphasis added). More recently, we applied this definition to hold that a judge who represented a corporation in contract negotiations and who advised the corporation regarding those negotiations had engaged in the practice of law. *See In re Fleischman,* 188 Ariz. 106, 111, 933 P.2d 563, 568 (1997). As these cases make clear, a person need not appear in a judicial proceeding to engage in the unauthorized practice of law. Creasy concedes that he represented Smith when he took Dr. Crandall's sworn statement but argues that the medical claim evaluation issues at stake did not require the "application of a trained legal mind." *Baron v. City of Los Angeles,* 2 Cal.3d 535, 86 Cal.Rptr. 673, 469 P.2d 353, 358 (1970) (quoting *Agran v. Shapiro,* 127 Cal.App.2d Supp. 807, 273 P.2d 619, 626 (1954)). He also argues that because his examination of Dr. Crandall occurred in the context of a private arbitration, his actions do not constitute the unauthorized practice of law. We are unpersuaded for the following reasons.

¶ 11 In this case we need not decide whether the *Arizona Land Title* definition should be changed or whether the *Baron* definition of the practice of law is an appropriate narrowing of *Arizona Land Title* or *Fleischman.* Whatever may be the line separating the proper activities of lay people and lawyers in a non-adversary context, even a cursory look at the caption of the proceedings at which Creasy appeared and a sample of Creasy's examination of Dr. Crandall during the sworn statement makes it apparent that Creasy rendered the kind of core service that is and has "been customarily given and performed from day to day [only] in the ordinary practice of members of the legal profession." [2] *See Arizona Land Title,* 90 Ariz. at 95, 366 P.2d at 14. As noted, our cases make clear that a person need not appear in a judicial proceeding to engage in the practice of law. If negotiation of a contract in *Fleischman* was the practice of law, then, *a fortiori,* Creasy's representa-

tion of Smith by examining a witness in an adversary setting involving a disputed claim certainly falls within that definition as well, particularly in light of the nature of the examination, which was no less exhaustive or rigorous than one would ordinarily see during a formal deposition in a judicial proceeding.

¶ 12 We are quite aware of the social, technological, and economic changes that have taken place since our decision in *Arizona Land Title.* In some situations these changes may require us to reexamine our broad definition of the practice of law. This is not the case in which to do so. We do not deal here with the legitimate practice of other professionals, with the preparation or distribution of generic documents and forms for general use, the mere giving of legal advice, or even the preparation of documents for a specific client, the situation in which the "trained legal mind" test evolved. *See Agran v. Shapiro,* 273 P.2d 619 (accountant not practicing law when preparing clients' income tax returns but engaged in unauthorized practice when preparing application for carry-back adjustment of losses). *See also Fravel v. Stark County Board of Revision,* 88 Ohio St.3d 574, 728 N.E.2d 393 (2000) (non-lawyer holder of "Durable General Power of Attorney" for property owner engaged in unauthorized practice of law when he filed appeal with Ohio Board of Tax Appeals; appeal remanded to county Board of Revision with instructions to dismiss not only because non-lawyer violated Ohio unauthorized practice statute but also pursuant to court's constitutional supervisory power over practice of law).

¶ 13 Our conclusion that Creasy engaged in the practice of law by acting as a public adjuster is supported by the decisions of other jurisdictions. The Illinois Supreme Court held that a suspended lawyer engaged in the unauthorized practice of law when he represented a former client in settlement negotiations against her insurance company even though the insurance company had already admitted liability. *See In re Bodkin,* 21 Ill.2d 458, 173 N.E.2d 440 (1961). Citing *Liberty Mutual Insurance Co. v. Jones,* 344

---

2. See attached appendix.

Mo. 932, 130 S.W.2d 945, 960 (1939), for the proposition that adjusters employed by insurance companies do not engage in the unauthorized practice of law, Bodkin argued that "his position was the same as that of an adjustor for an insurance company except that he was acting on behalf of a claimant." *Bodkin,* 173 N.E.2d at 441. The Illinois court rejected this argument, distinguishing *Liberty Mutual* on the grounds that the Missouri Supreme Court had

> distinguished between services rendered by an insurance adjuster on behalf of his company and services rendered by one who negotiates a claim against the company.... The court stated ... [that] "appellants' lay claim adjusters work only for their several employers, who hire and retain them with their eyes open. When they deal with claimants it is on an adversary basis, not a representative basis implying a fiduciary relation."

*Id.* at 441–42 (quoting *Liberty Mutual,* 130 S.W.2d at 960).

¶ 14 Kansas, like Arizona, has no statute prohibiting the unauthorized practice of law, has reached the same result by approximately the same reasoning. *See State ex rel. Stovall v. Martinez,* 27 Kan.App.2d 9, 996 P.2d 371 (2000). The *Martinez* court held that an insurance claims "consultant" engaged in the unauthorized practice of law by putting together settlement brochures, negotiating settlements on behalf of injured persons, and advertising that he could save claimants the trouble of hiring a lawyer. The court concluded that the consultant offered a service that required knowledge of legal principles and that his financial interest in settling without litigation conflicted with his clients' interest in receiving a fair settlement, thus distinguishing the consultant's work from that done by insurance company adjusters. *See id.* at 375. The court thus enjoined the consultant from further representation. *See id.* Although the injunction was issued under Kan.Stat.Ann. § 50–623, *et seq.,* the Kansas Consumer Protection Act, the finding of unauthorized practice was based on the court's "inherent power to define and regulate the practice of law." *Id.* at 374.

¶ 15 Of course, unlike Illinois, which had no statute authorizing adjusters to investigate or settle claims "on behalf of either the insurer or the insured," the Arizona Legislature arguably has authorized private adjusters to represent claimants against insurance companies. *See* A.R.S. § 20–281(A). However, we still find persuasive the Illinois court's rejection of Bodkin's argument that his actions were merely "administrative" because of his status as an admitted, though suspended, attorney. *See Bodkin,* 173 N.E.2d at 442. The court held that Bodkin was engaged in the practice of law, reasoning, "It is obvious that settling a case, under these circumstances, required legal skill. It is mere sham ... to contend that the acts during suspension were clerical, administrative, and ministerial only." *Id.* Creasy clearly employed legal skill during his examination of Dr. Crandall and cannot now claim he was not engaged in practicing law.

¶ 16 The Kansas Supreme Court reached a similar result in a case in which a suspended lawyer continued all his activities except court appearances, finding that his activities were not permissible just because they could have been performed by non-lawyers. *See State v. Schumacher,* 214 Kan. 1, 519 P.2d 1116 (1974). The court's rationale was that "some actions which may be taken with impunity by persons who have never been admitted to the practice of law, will be found to be in contempt if undertaken by a suspended or disbarred attorney." *Id.* at 1125. Applying this reasoning to our facts, we believe Creasy, who acted as a representative for his client by examining a witness in an adversarial setting, cannot now claim to have merely engaged in insurance adjusting under A.R.S. § 20–281.

**C. Legislative authority to license private insurance adjusters**

¶ 17 Finally, we turn to Creasy's argument that pursuant to A.R.S. § 20–281, the legislature has authorized the licensing of private insurance adjusters and that he is therefore subject only to the jurisdiction of the Department of Insurance. This argument is also without merit. In defining adjuster and setting out licensing requirements

**544**

in A.R.S. §§ 20–281 and 20–312, the legislature has undertaken the regulation of insurance adjusters. Section 20–281(A) defines an adjuster as

> any person who, for compensation as an independent contractor *or as the employee* of such an independent contractor ... *investigates and negotiates settlement of claims* arising under insurance contracts, on behalf of either the insurer or the insured.

(Emphasis added.) Creasy acted as an employee of his wife, who is licensed as an adjuster under A.R.S. § 20–312. Creasy's actions during the sworn statement are therefore permissible if we consider only the statute and if they can technically be characterized as only the investigation, negotiation and settlement of claims.

¶ 18 But even if we were so persuaded, the legislature's adoption of A.R.S. § 20–281 cannot authorize Creasy to violate our disbarment order by engaging in activities that constitute the practice of law. *See Marchant,* 12 F.Supp.2d at 1005 (Rule 31 trumps statutory law because the practice of law is "within the exclusive authority of the judiciary" (citation omitted)). Section 20–281 is intended to regulate insurance adjusters. The legislature has not purported to, nor can it, authorize non-lawyers or disbarred lawyers to practice law. Whether it is within the legislature's power to authorize one to engage in activities that constitute the practice of law while engaging in the business of insurance adjusting is a question we reserve for the appropriate case, if and when brought.

## CONCLUSION

¶ 19 We hold that Creasy has violated Rule 31(a)(3) and the order of disbarment. We thus find him in contempt and order that he immediately cease and desist from any further activities that constitute the practice of law. In lieu of other penalties that might be imposed, Creasy is ordered to pay the costs incurred by the State Bar, plus reasonable attorneys' fees, the amount to be approved by this court on application by the State Bar.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, and RUTH V. McGREGOR, Justice.

MARTONE, Justice, concurring.

¶ 20 I join the holding that this court has jurisdiction over disbarred lawyers pursuant to the order of disbarment and Rule 31(a)(3), Ariz.R.Sup.Ct. Creasy is a disbarred lawyer. This case, therefore, affords us no opportunity to address the quite separate question of whether this court has jurisdiction over persons who were never lawyers and whose activities are not part of, or ancillary to, Judicial Department institutions within the meaning of Article VI, § 1 of the Arizona Constitution.

¶ 21 This court has regulatory power over lawyers and disbarred lawyers engaged in the practice of law in this state, for activities both within the Judicial Department and outside of it. This court also has the exclusive authority to determine who shall appear in a representative capacity in Judicial Department institutions and activities ancillary to them. This means that we can prohibit non-lawyers from representing others in Article VI institutions and proceedings conducted pursuant to Article VI authority (e.g., depositions). But what of non-lawyers engaged in the practice of law outside of Judicial Department institutions? I do not join in that part of the majority opinion, *ante,* at ¶¶ 6 and 7, which contains dicta suggestive of an answer to this troublesome question. The expansive dicta is imprudent because this is not an action against a person who was never a lawyer.

¶ 22 The question of jurisdiction over non-lawyers for activities outside of Article VI institutions or authority is the direct result of the absence of an unauthorized practice of law statute. That absence creates a potential incongruity between the breadth of the definition of the practice of law, on the one hand, and the limited scope of the Judicial Department's enforcing authority under Article VI of the Constitution, on the other. Because this court does not possess the broader police power of the state (the legislature does), the question of non-lawyers engaged in activities within the definition of the

practice of law, yet unconnected to Judicial Department institutions, is complex and its answer must await another day. In the meantime, it is enough to say that we have the power to enforce our orders of disbarment.

---

IN THE MATTER OF THE ARBITRATION OF