John HAYMOND, Haymond Napoli Diamond, P.C.-CT,

v.

Marvin LUNDY,

v.

John HAYMOND, Robert Hochberg, Haymond, Napoli, Diamond, P.C.-CT

No. CIV. A. 99–5048.

United States District Court, E.D. Pennsylvania.

Aug. 31, 2001.

Martin Heller, Philadelphia, PA, Special Master.

Paul R. Rosen, Bruce L. Thall, David B. Picker, Spector, Gadon and Rosen, P.C., Philadelphia, PA, for Marvin Lundy.

Peter J. Hoffman, McKissock & Hoffman, P.C., Philadelphia, PA, Jack J. Bernstein, Haymond, Napoli & Diamond, P.C., Philadelphia, PA, for Robert Hochberg.

Judah I. Labovitz, Mann, Ungar, and Spector, P.A., Philadelphia, PA, for John Haymond.

## MEMORANDUM AND ORDER

SHAPIRO, Senior District Judge.

In October, 1997, John Haymond ("Haymond"), Robert Hochberg ("Hochberg") and Marvin Lundy ("Lundy") formed the law firm of Haymond & Lundy, LLP ("H & L") to practice law in Philadelphia and the surrounding areas. Lundy had been practicing law in Philadelphia for some time, but his previous law firm had recently been dissolved. Haymond and Hochberg were partners in a Connecticut law firm and wished to expand geographically. Under the Haymond & Lundy Partnership Agreement, Hochberg was made the Managing Partner of H & L.

H & L was dissolved in October, 1999, at which time Haymond and Lundy each filed an action against the other. The actions were consolidated, and the parties were eventually realigned with Haymond as plaintiff.

Lundy, answering Haymond's complaint, asserted a counterclaim against Hochberg for unauthorized practice of law. Lundy

argued Hochberg, who has never been admitted to the bar of the Commonwealth of Pennsylvania: (1) failed to apply for readmittance in Pennsylvania after his disbarment in Massachusetts and consequent suspension in Connecticut; and (2) repeatedly misrepresented that he was licensed to practice law in Pennsylvania.

Lundy requested relief in the form of a permanent injunction against Hochberg. The court held a non-jury trial on Lundy's claim against Hochberg.[1] In accordance with Federal Rule of Civil Procedure 52(a), the court enters the following findings of fact and conclusions of law:

### I. Findings of Fact:

1. In 1996 Robert Hochberg was licensed to practice law in both Massachusetts and Connecticut. At that time, Hochberg was a partner in John Haymond, P.C. Tr. Jan. 17, 2001, at 64–65. The firm practiced in Massachusetts, Connecticut and New York. *Id.* Hochberg served as the Managing Partner of that firm. Tr. Jan. 17, 2001, at 66.

2. In 1996, Haymond, Hochberg and Lundy began discussing the formation of a partnership to practice law in the Philadelphia area. Tr. Jan. 17, 2001, at 66–70.

3. On May 7, 1996, Hochberg was indicted by a grand jury of the United States District Court for the District of Massachusetts on two counts of conspiracy to commit bank fraud. Tr. Jan. 17, 2001, at 15; L. Ex. 8.[2]

---

1. The parties stipulated that the court could consider all relevant testimony and evidence from the jury trial of the cross-claims for breach of contract held January 17, 2001 to January 25, 2001, in addition to the testimony and evidence presented at the non-jury trial.

2. Throughout the jury trial of the cross-claims for breach of contract and the non-jury trial of Lundy's claim against Hochberg for unauthorized practice of law, exhibits offered by Haymond were referred to as "plaintiff's exhibits" and exhibits offered by Lundy were referred to as "Lundy exhibits." At the non-

4. Negotiations between Lundy, Hochberg and Haymond continued over the terms of a partnership to practice law in Philadelphia; at some point in these negotiations, Lundy was informed of Hochberg's indictment. Tr. Jan. 19, 2001, at 129–130.

5. On August 4, 1997, Hochberg pled guilty to one count of the Massachusetts indictment. L. Ex. 19.

6. Haymond, Hochberg and Lundy formed the law firm of Haymond & Lundy, LLP in October, 1997. P.Ex. 1.

7. After the formation of Haymond & Lundy, LLP, Haymond began using the name Haymond & Lundy as a trade name for his Connecticut firm, John Haymond, P.C. The Connecticut firm remained a separate corporate entity. The Connecticut firm will be referred to as John Haymond, P.C. t/a Haymond & Lundy, LLP.

8. The Haymond & Lundy Partnership Agreement provided that Hochberg would hold a ten-percent interest in H & L.P.Ex. 1., § 3.01. It also provided that Hochberg would serve as Managing Partner of H & L.P.Ex. 1., § 5.02. He was to supervise the "day-to-day business and administration of the Partnership." *Id.* After H & L's formation, Hochberg worked at the Philadelphia office of H & L two or three days per week. Tr. Feb 21, 2001, at 130–31.

9. Robert Hochberg is not now, nor has he ever been, licensed to practice law in the Commonwealth of Pennsylvania. Tr. Jan. 17, 2001, at 15.

10. Hochberg's name was listed among the attorneys on the sign outside H & L's office at 1600 Market Street, Philadelphia, PA. L. Ex. 25; Tr. Jan. 31, 2001, at 10–11 & 156. The sign did not specify the jurisdictions in which he was authorized to practice law, nor that he was not licensed to practice law in the Commonwealth of Pennsylvania. L. Ex. 25.

11. As the firm's Managing Partner, Hochberg directed the lawyers at H & L. He assigned attorneys to cases and directed when certain actions should be taken with regard to cases. *See, e.g.,* Tr. Jan. 31, 2001, at 154–56 (Hochberg directed an attorney not to pursue post-trial motions and instituted a policy that all attorneys should immediately file suit in client cases involving a specific insurance company.). He occasionally attended morning meetings at which the status of H & L cases was discussed. When participating in these meetings, Hochberg gave his advice and opinion on case management and strategy. Tr. Jan. 31, 2001, at 11–14, 141–42.

12. Former associates at H & L testified that they felt obligated to follow Hochberg's recommendations on litigation strategy because Hochberg was the Managing Partner. Tr. Jan. 31, 2001, at 45 & 142–43.

13. On November 17, 1997, Hochberg was sentenced in Massachusetts on his plea of guilty to a conspiracy count; he received three years probation, and was required to pay restitution of $71,500 and a fine of $50. Tr. Jan. 17, 2001, at 15.

jury trial, Lundy used the same exhibits binder and continued to refer to his exhibits as "Lundy exhibits." Hochberg similarly referred to exhibits from the binder used by Haymond at the jury trial as "plaintiff's exhibits," but he also introduced an exhibit from a different binder and termed it a "counterclaim defendant's exhibit." To avoid confusion, the court will continue to use this nomenclature. Those termed "Lundy exhibits" will be designated "L. Ex.", those termed "plaintiff's exhibits" will be designated "P.Ex.", and those termed "counterclaim defendant's exhibits" will be designated "C.D. Ex."

14. On November 18, 1997, the Massachusetts Supreme Court issued an order disbarring Hochberg. Tr. Jan. 17, 2001, at 15.

15. After his disbarment in Massachusetts, Hochberg's name was removed from the Massachusetts office letterhead of John Haymond, P.C. t/a Haymond & Lundy. Tr. Feb 22, 2001, at 23 & 25. The lawyers in that office were instructed that Hochberg was not to be involved in cases or talk to clients. Tr. Feb 22, 2001, at 23.

16. On November 26, 1997, the Statewide Grievance Committee for the State of Connecticut, initiated an action to discipline Hochberg for his Massachusetts conviction. L. Ex. 44, at 1–2.

17. On April 17, 1998, Hochberg's license to practice law in Connecticut was suspended on an interim basis. L. Ex. 44, at 4; Tr. Jan. 17, 2001, at 92.

18. In response to his suspension in Connecticut, a meeting was held at the Connecticut office of John Haymond, P.C. t/a Haymond & Lundy, and steps were taken to ensure that Hochberg's name would not appear on the Connecticut office's letterhead and that he would not have contact with clients. Tr. Feb. 22, 2001, at 26. Haymond also notified the banks that handled the accounts for the Connecticut and Massachusetts offices and asked that Hochberg's name be removed from those accounts. Tr. Feb. 22, 2001, at 27.

19. On the date of his suspension in Connecticut, Hochberg transferred his interest in H & L to Haymond under a Conditional Agreement dated November 29, 1997. Tr. Jan. 17, 2001, at 91–92; Tr. Feb. 21, 2001, at 127; P.Ex. 49.

20. Hochberg knew that, after the suspension of his license to practice in Connecticut, he was no longer permitted to practice law in any jurisdiction. Tr. Feb 21, 2001, at 127. Hochberg was also aware that he was neither an owner, nor a partner of H & L after his Connecticut license was suspended. Tr. Feb 21, 2001, at 127.

21. No meeting with H & L's staff was ever held to discuss his disbarment in Massachusetts or suspension in Connecticut, nor was he removed as a signatory on the Philadelphia or New Jersey bank accounts. Tr. Feb. 22, 2001, at 27–28.

22. Hochberg continued to work at the Philadelphia office two or three days a week. Tr. Feb 21, 2001, at 130–31.

23. Throughout his suspension and disbarment, Hochberg's name continued to appear on the sign listing the lawyers of H & L outside the entrance to its Philadelphia office. Tr. Jan. 31, 2001, at 12 & 156; Tr. Feb. 21, 2001, at 131.

24. Hochberg's name also continued to appear on H & L letterhead with the designation "CT," as if he were licensed to practice law in the state of Connecticut. Tr. Jan. 31, 2001, at 77–78. He wrote to other attorneys on this letterhead during his suspension. *See, e.g.,* L. Ex. 98.

25. Hochberg signed marketing agreements, leases and other business documents on behalf of H & L as "Managing Partner" or as a "partner." Tr. Feb. 21, 2001, at 48, 131–37, & 140–41.

26. Hochberg led the employees of H & L to believe he remained Managing Partner. Tr. Feb. 21, 2001, at 163; Tr. Jan. 22, 2001, at 204.

27. H & L moved to new offices in January, 1999, and Hochberg received new business cards reflecting the change of address. Tr. Jan. 31, 2001, at 59–65. These business cards listed his position as Managing Partner. L. Ex. 204. The cards did not list where, if anywhere, Hochberg was licensed to practice law. L. Ex. 204.

28. Hochberg had contact with at least a few clients while serving as Managing Partner of H & L in Philadelphia:

A. In August, 1998, Michelle Dell'Orefice was assigned to review a distribution statement with a client named Peter Dugan. Tr. Feb. 21, 2001, at 79–80. The client was dissatisfied with the distribution statement and demanded to see an attorney; Dell'Orefice asked Hochberg to speak with Dugan. Tr. Feb. 21, 2001, at 81. Hochberg assured the client H & L would attempt to renegotiate a medical bill with a doctor and, if successful, would send the client the balance of the money. Tr. Feb. 21, 2001, at 85.

B. In the Spring of 1999, Hochberg had telephone contact with a client, Jason Greer, who wanted to sell the rights to his portion of a judgment, then on appeal, in order to receive money immediately. Tr. Jan. 31, 2001, at 143–44. Greer needed information from H & L in order to complete the sale. Tr. Jan. 31, 2001, at 144. Hochberg contacted both Greer and the attorney representing the judgment purchaser. Tr. Jan. 31, 2001, at 144; Dep. of Timothy Foley, at 16–18. This attorney believed Hochberg was an attorney representing Greer. Dep. of Timothy Foley, at 20–21.

29. Lundy produced evidence that Hochberg had contact with other attorneys on behalf of H & L; Hochberg wrote to an attorney in Florida to finalize referral of an H & L client to the Florida attorney for a referral fee of 25%. L. Ex. 98.

30. In July, 1999, a Connecticut court clarified the duration of Hochberg's suspension. The court ordered Hochberg suspended from the practicing law in Connecticut for three years, from November 18, 1997. L. Ex. 44. at 8.

31. Lundy dissolved H & L in October, 1999.

32. Haymond formed a new firm, Haymond Napoli Diamond, P.C. ("HND–PA"). Hochberg initially became the "manager" of this new firm. P.Ex. 75. He never received business cards that listed his position as the "manager" of this law firm. Tr. Feb. 23, 2001, at 185.

33. Sometime after November 22, 2000, Hochberg was made a shareholder of HND–PA. Tr. Feb. 23, 2001, at 165–66. He reassumed the title Managing Partner in December, 2000. Tr. Feb. 23, 2001, at 166.

34. In December, 2000, Hochberg ordered new business cards. Tr. Feb. 23, 2001, at 162. Those cards listed his position as Managing Partner of HND–PA above the firm's Pennsylvania and Connecticut addresses. L. Ex. 208. The cards did not state where Hochberg is admitted to practice law. L. Ex. 208.

35. Hochberg now maintains a residence in Philadelphia. Tr. Feb. 23, 2001, at 149. His future plan is to work at the Philadelphia office of HND–PA a few days every other week. Tr. Feb 23, 2001, at 151.

36. In February, 2001, the Connecticut court issued an order of reinstatement, confirming Hochberg's status as a member of the bar of the state of Connecticut. C.D. Ex. 18; Tr. Feb. 23, 2001, at 163.

37. Robert Hochberg's testimony was only partially credible. His testimony that he repeatedly attempted to remove his name from the letterhead of the Philadelphia firm after his suspension, Tr. Feb. 21, 2001, at 162, Tr. Feb. 22, 2001, at 34–37, was not credible. This testimony was impeached by the credible testimony of Bernetta Henri and Dawn Kemp, former office assistants at H & L. Tr. Jan. 31, 2001, at 77–78; Tr. Jan. 22, 2001, at 204–208. The documentary evidence introduced at trial

supported the testimony of Bernetta Henri and Dawn Kemp. L. Ex. 84; L. Ex. 76.

38. Scott Diamond's testimony that he told either Dawn Kemp or Bernetta Henri, and Hochberg to remove Hochberg's name from H & L stationery, Tr. Jan. 22, 2001, at 220, was not credible. It was contradicted by the testimony of Dawn Kemp and Bernetta Henri, as well as the testimony of Hochberg. Tr. Jan. 22, 2001, at 209; Tr. Jan. 31, 2001, at 77–78.

39. John Haymond's testimony was only partially credible. His testimony on Hochberg's role in the Philadelphia law firm was inconsistent. At the jury trial, Haymond testified that Hochberg was to do the same thing at the Philadelphia firm as he had been doing in Connecticut. Tr. Jan. 17, 2001, at 78; see also Tr. Jan. 18, 2001, at 20–21. He then testified that in Connecticut, Hochberg had been responsible for, among other things, "dealing with the lawyers ... and ... the financial aspects of running the law firm." Tr. Jan. 17, 2001, at 66. Later in his testimony, he narrowed his description of Hochberg's duties and claimed he was only the "financial manager of the office and [that] his duties [bore] no relationship to him being a lawyer." Tr. Jan. 17, 2001, at 94. At the non-jury trial, Haymond testified that Hochberg's duties in Connecticut included assigning cases to attorneys, supervising the attorneys and discussing the progress of their cases with them. Tr. Feb 22, 2001, at 7. Finally, at his deposition, Haymond had testified that in Connecticut Hochberg also reviewed medical documents, gave attorneys advice on litigation strategy and valued cases. Tr. Jan. 18, 2001, at 20. Haymond's testimony that Hochberg merely dealt with financial matters is also contradicted by the credible testimony of Tom Masterson, which supports Haymond's deposition testimony that Hochberg directed the Philadelphia attor-

neys at H & L on legal matters. Tr. Jan. 31, 2001, at 154.

40. Tom Masterson was an associate at H & L. He testified to Hochberg's practices as Managing Partner. Although he now works for Marvin Lundy, his testimony was credible. His demeanor suggested credibility and his testimony was supported by the testimony of Donald Marino and, in part, by the testimony of Hochberg and Haymond.

41. Donald Marino's testimony regarding Hochberg's role in H & L was credible, Tr. Jan. 31, 2001, at 11–14 & 44–45; it was supported by the testimony of Tom Masterson. Tr. Jan. 31, 2001, at 154 & 157. Marino's testimony that he did not know Hochberg was not licensed to practice in Pennsylvania, Tr. Jan. 31, 2001, at 16, was not credible. This testimony was impeached by the substantial amount of evidence documenting Hochberg being listed on H & L's letterhead as licensed to practice only in Connecticut. See, e.g., L. Ex. 98; P.Ex. 25.

42. Linda Mirow's testimony was not credible. Mirow testified that Hochberg confided in her his plan to remove Lundy from the law firm, but that she never informed Lundy of Hochberg's plan. Tr. Feb. 21, 2001, at 52–58. This testimony was inconsistent with her deposition testimony, Tr. Feb. 21, 2001, at 61–64, and self-contradictory. She maintained that she felt extremely loyal to Mr. Lundy, Tr. Feb. 21, 2001, at 58–59, yet could not credibly explain why she did not tell Lundy of Hochberg's supposed plan to force him out of Haymond & Lundy. See Tr. Feb 21, 2001, at 65–66 (Personal relationship with Hochberg played no role in her decision not to tell Lundy of Hochberg's alleged plan to replace him). No weight was given to this testimony.

43. Michelle Dell'Orefice's testimony regarding Hochberg's contact with Peter

Dugan was credible; it was substantially corroborated by Hochberg and in accord with the credible testimony of Tom Masterson.

44. Steven Perna, an agent of H & L's landlord at Seven Penn Center, testified credibly that Hochberg introduced himself as the Managing Partner of H & L. Tr. Feb. 21, 2001, at 39–40. Hochberg never clarified that he was not an attorney. Tr. Feb. 21, 2001, at 43–44. His testimony was supported by Hochberg's trial testimony and the evidence that Hochberg signed the lease for H & L's office space as Managing Partner. Tr. Feb. 21, 2001, at 43, 48.

45. Jeffrey Lundy, a Pennsylvania attorney, testified that he believed that Hochberg was a Pennsylvania attorney based on his demeanor and authority in the firm. Dep. at 18 & 22. This deposition testimony was credible under the circumstances.

46. David Easterly's testimony was contradicted by Hochberg's testimony and was not credible. It was not given weight.

47. The testimony of Frank Bass was not credible. Bass, who currently works for Marvin Lundy, is facing civil charges of unauthorized practice of law brought by John Haymond, Robert Hocheberg's best friend and partner. Tr. Feb. 21, 2001, at 98. His testimony was given no weight by the court.

48. Arlin Adams, Esq., testified to the customs and practices of the local legal community. See, e.g., Tr. Feb. 23, 2001, at 92 (It is the customary practice in Philadelphia for an attorney to resign his position once suspended from the practice of law). The court finds his testimony very credible. Some of his testimony focused on the applicable legal standards. See, e.g., Tr. Feb 23, 2001, at 66–69. Such testimony is not binding on the court.

## II. Discussion

### A. Jurisdiction and Abstention:

The court has supplemental jurisdiction over this matter under 28 U.S.C. § 1367; the court found this matter sufficiently related to the other claims of Haymond and counterclaims of Lundy that they formed part of the same case and controversy. See Haymond v. Lundy, No. 99–5048, 2000 WL 1824174, * 2 (E.D.Pa. Dec.12, 2000).

Citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), Hochberg argued, prior to trial, that this court should abstain from adjudicating this matter. The court declined to abstain. The question presented is not novel; the Supreme Court of Pennsylvania has addressed the issue at least twice. See Shortz v. Farrell, 327 Pa. 81, 193 A. 20 (1937); Dauphin County Bar Ass'n v. Mazzacaro, 465 Pa. 545, 351 A.2d 229 (1976). Other federal courts have addressed this issue in the past. See, e.g., In re Stone, 166 B.R. 269, 274 (W.D.Pa. Bankr.1994).

### B. Unauthorized Practice of Law

In Pennsylvania, an "attorney at law" is a person "admitted to the bar of the courts of this Commonwealth." 42 Pa. Cons.Stat. Ann. § 2521. The unauthorized practice of law is statutorily defined:

any person ... who within this Commonwealth shall practice law, or who shall hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the

law of any jurisdiction, without being an attorney at law.

42 Pa. Cons.Stat. Ann. § 2524(a). This statute governs the conduct of "any person" not licensed to practice law in the Commonwealth of Pennsylvania while in Pennsylvania.

Title 15 Pa. Cons.Stat. § 8105, provides, "all the partners in a partnership that renders one or more restricted professional services shall be licensed persons." 15 Pa. Cons.Stat. Ann. § 8105; *see also* 15 Pa. Cons.Stat. Ann. § 8903 (A law firm is a partnership to render a professional service). A licensed person is a "person who is duly licensed or admitted to practice his profession by a court, department, board, commission of this Commonwealth or another jurisdiction to render [the] professional service." 15 Pa. Cons.Stat. Ann. § 8903

 Lundy asserts that § 8105 permits an attorney, not licensed in the Commonwealth, but licensed in another state, to practice law in Pennsylvania if he or she is a partner in a Pennsylvania law firm, and subjects the attorney to the Rules of Disciplinary Enforcement and Code of Professional Conduct (collectively "disciplinary rules") applicable to lawyers licensed in the Commonwealth. Lundy contends Hochberg was authorized to practice law in Pennsylvania up until the date of his suspension in Connecticut, and that, upon his suspension, he was required to abide by Pennsylvania's disciplinary rules applicable to an attorney suspended from the practice of law. Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement requires an attorney suspended from the practice of law to notify: (1) all clients; (2) opposing counsel; (3) all persons to whom he or she owes a fiduciary duty; and (4) all professional contacts who might infer the attorney remains in good standing. At the conclusion of the suspension, the attorney must apply for reinstatement under Rule 218.

Lundy asserts that because Hochberg failed to abide by the Rules of Disciplinary Enforcement, he has been unauthorizedly practicing law in the Commonwealth since the date of his suspension. Lundy seeks an injunction: (1) requiring Hochberg to comply with the Pennsylvania disciplinary rules for suspended attorneys; and (2) forbidding him from practicing law in Pennsylvania until he is readmitted by the appropriate Pennsylvania disciplinary authority.

Lundy's reading of § 8105 is untenable. Section 8105 does not authorize an attorney licensed in another state to practice law in Pennsylvania simply because he or she is a partner in a Pennsylvania law firm. The statute does not address the practice of law; it merely permits a non-Pennsylvania lawyer to be a partner and share profits in a Pennsylvania law firm. *See Washko v. Platz,* 368 Pa.Super. 449, 534 A.2d 522, 524 (1987)("an attorney licensed to practice law only in a sister state is prohibited from practicing law in Pennsylvania unless a license to practice law in Pennsylvania is obtained"); *see also* Pa. Bar Assoc. Op. 92–19 ("There is no indication and no requirement that all the attorneys sharing in the firm be licensed in Pennsylvania.").

Section 8105 does not subject an attorney who is a partner in a Pennsylvania law firm, but not licensed in Pennsylvania, to the disciplinary authority of the Pennsylvania Supreme Court. Nowhere does the statute mention the disciplinary rules, and Lundy's reading of the statute contradicts the jurisdictional provision of the rules themselves. Rule 201 of the Pennsylvania Rules of Disciplinary Enforcement states that the rules govern:

(1) Any attorney admitted to practice in this Commonwealth.

(2) Any attorney of another jurisdiction specially admitted by a court of this Commonwealth for a particular proceeding.

Pa. R. Disciplinary Enforcement 201(a)(1)-(2).

■ There is some argument that Rule 201(a)(3) makes the disciplinary rules applicable to an attorney, like Hochberg, who was admitted only in another jurisdiction and then suspended from practice there. Rule 201(a)(3) states that the disciplinary rules govern "[a]ny formerly admitted attorney, with respect to acts prior to suspension, disbarment, or transfer to inactive status, or with respect to acts subsequent thereto which amount to the practice of law." Read in isolation, this subsection provides that the Pennsylvania Rules of Disciplinary Procedure govern attorneys admitted in other jurisdictions only if they have been disbarred or suspended in that jurisdiction, and then regardless of whether they had ever practiced in or even traveled to Pennsylvania, an unlikely result. It would require a disbarred or suspended attorney, never admitted in Pennsylvania to apply for "readmission," a contradiction in terms. Despite the plain reading of this clause when isolated, the court finds the term "formerly admitted attorney" refers only to attorneys previously admitted to practice in the Commonwealth. *See* Pa. R. Disciplinary Enforcement 201(a)(1).

Title 42 Pa. Cons.Stat. Ann. § 2524 governs Hochberg's situation.[3] The purpose of this statute is to protect the public of the Commonwealth. *See In re Stone,* 166 B.R. 269, 274 (W.D.Pa.Bankr.1994). Under § 2524 it is unlawful for an attorney not licensed in Pennsylvania to: (1) practice law in the Commonwealth; and/or (2) hold himself out as able to practice law in the Commonwealth. *Cf.* Phila. Bar. Assoc. Op. 94–16 ("[Q]uite apart from the regulation of nonlawyers, § 2524 prohibits lawyers admitted elsewhere than in Pennsylvania from, at the very least, conducting any of the following activities in Pennsylvania: (1) practicing law; (2) maintaining an office for the practice of law; (3) appearing in court; and (4) drafting instruments for others.").

## A. The Practice of Law

■ Pennsylvania courts have never attempted to define the practice of law precisely. *See Shortz v. Farrell,* 327 Pa. 81, 193 A. 20, 21 (1937). The question of whether a particular activity constitutes the practice of law depends upon whether the activity involves the "exercise of legal judgment." *Dauphin County Bar Ass'n v. Mazzacaro,* 465 Pa. 545, 351 A.2d 229, 233 (1976); *see also Shortz,* 193 A. at 21 ("Where the application of legal knowledge and technique is required, the activity constitutes [the] practice [of law]."). Advising a client on what should be excluded and included in a bankruptcy petition has been held to be the practice of law. *See In re Stone,* 166 B.R. at 274–75. Similarly, advising and representing a client during

---

**3.** If the court agreed with Lundy's interpretation that

§ 8105 makes the Commonwealth's disciplinary rules applicable to Hochberg, this court would lack jurisdiction to proceed in this action. *See Haymond v. Lundy,* No. 99–5048, 2000 WL 1824174, 2001 U.S. Dist. LEXIS 17879, * 6 (E.D.Pa. Dec. 12, 2000)(Supreme Court of Pennsylvania has exclusive jurisdiction to discipline attorneys governed by the disciplinary rules); *see also* Pa. R. Disciplinary Enforcement 103 ("The Supreme court declares that it was inherent and *exclusive* power to supervise the conduct of attorneys who are its officers.")(emphasis added).

settlement negotiations has been held to require the application of abstract legal principles and constitute the practice of law. *See Dauphin County*, 351 A.2d at 233–34.

Hochberg maintains that his work in Pennsylvania as Managing Partner did not, and does not, involve the practice of law. The evidence shows that Hochberg, as Managing Partner, supervised and directed the attorneys in the Philadelphia office. He decided which cases should be assigned to which attorney and directed the litigation strategy of the attorneys in H & L, including whether to file suit, when to file suit, and whether to appeal. *See* Tr. Jan. 31, 2001, at 154–56. He implemented a policy requiring all attorneys to file suit immediately in cases involving a particular insurance company. *See* Tr. Jan. 31, 2001, at 155–56. Such decisions require the decisionmaker to analyze the complexity of the client's case and determine the likelihood of success under applicable legal standards: making these decisions constitutes the practice of law. *See Dauphin County*, 351 A.2d at 234 ("Such an assessment ... involves an understanding of the applicable tort principles ..., a grasp of the rules of evidence, and an ability to evaluate the strengths and weaknesses of the client's case vis a vis that of the adversary."). Hochberg also acknowledges that he was the business manager of H & L, in charge of "financial decisions." Making financial decisions on behalf of a law firm can require legal judgment when the decisions directly inform and influence how an attorney proceeds with litigation. For example, Masterson testified that Hochberg made decisions about which cases to "fund". Hochberg was involved in "[e]ssentially anything having to do with money for experts, anything having to do with a particular case that we would invest a

lot of money in." Tr. Jan. 31, 2001, at 140; *see also* Tr. Jan. 31, 2001, at 154–55 (Hochberg directed Masterson not to pursue post-trial motions in a case because he did not wish H & L to pay for the trial transcript).

The decisions whether to provide the money to hire an expert, send the client for a medical consultation, take a certain number of depositions are not simply financial decisions; they are litigation decisions. Making these decisions on behalf of Pennsylvania clients requires an understanding of the Pennsylvania rules of evidence and Pennsylvania tort law. Such decisions must be made by attorney, or a client in consultation with an attorney. An attorney making such decisions is engaged in the practice of law. *See Dauphin County*, 351 A.2d at 233–34 (Where "an assessment of the likelihood that liability can be established in a court of law" is a crucial factor in making a decision, making the decision constitutes the practice of law.).

Hochberg engaged in the unauthorized practice of law in Pennsylvania before his suspension in Connecticut and during the period of that suspension. He has acted as an attorney in Pennsylvania regularly, but he is not and never has been licensed to practice law in Pennsylvania.

## B. Holding Oneself out as an Attorney:

Under § 2524, it is unlawful for someone not licensed in Pennsylvania to hold himself or herself out to the public of the Commonwealth as authorized to practice law. This statute safeguards members of the public from being deceived by assuring them that one who holds himself out as authorized to practice law in the Commonwealth has the expert knowledge required to attain and maintain membership in the bar here. *See Dauphin County*, 351 A.2d at 232 ("When a person holds himself out

to the public as competent to exercise legal judgment [in this jurisdiction], he implicitly represents that he has the technical competence ... and the requisite character qualifications to act in a representative capacity [here]. When such representations are made by persons not adequately trained or regulated, the dangers to the public are manifest.").

In *Ginsburg v. Kovrak*, 11 D. & C.2d 615, 617 (Phila.Cty.Ct.1957), Judge Curtis Bok held that an attorney licensed to practice law in the District of Columbia and certain federal courts, including some in Pennsylvania, violated an earlier form of this statute by holding himself out to the public of the Commonwealth as an attorney. The attorney's stationery, office sign, and business cards stated only that he was an "Attorney at Law" and listed a Philadelphia address. *See id.* at 616.

 Similarly, Hochberg's business cards from Haymond & Lundy, LLP and the sign that hung outside H & L's Philadelphia office failed to state the jurisdictional limitations of his practice. They announced only that he was Managing Partner of a Philadelphia law firm; they conveyed the impression that he was authorized to practice law in the Commonwealth.

To avoid such a misrepresentation, the Rules of Professional Conduct curtail the ability of firms to use letterhead stationery listing attorney names unless the stationery also lists the jurisdictional limits of the attorneys' practice. *See, e.g.,* Pa. R. Prof. Conduct 7.5 (A law firm with offices in more than one jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located). The same is logically required of business cards and signs. *See Ginsburg,* 11 D. & C.2d 615; *cf.* Pa. R. Prof. Conduct 7.1 (A Pennsylvania attorney is prohibited from making false or misleading communications about his or her services). If an attorney's name is presented along with an office address in Pennsylvania and he is not licensed to practice in the Commonwealth, the instrument should specify the jurisdictional limits of the attorney's practice. *See id.*

 In addition, on at least two occasions, Hochberg interacted with Pennsylvania clients of H & L in a manner that suggested he was authorized to practice in the Commonwealth. In August, 1998, Michelle Dell'Orefice was assigned to review a distribution statement with a client named Peter Dugan. Tr. Feb. 21, 2001, at 79–80. The client was unsatisfied with the distribution and demanded to see an attorney; Dell'Orefice asked Hochberg to speak with Dugan. Tr. Feb. 21, 2001, at 81. Hochberg assured the client the firm would attempt to renegotiate a medical bill with a doctor and, if successful, the client would receive the remainder of the money. Tr. Feb. 21, 2001, at 85. Given the circumstances, it was reasonable for Dugan to conclude that Hochberg was an attorney in Pennsylvania. Hochberg never clarified his role or the jurisdictional limits of his practice with Dugan.

 Hochberg also had contact with a firm client named Jason Greer. Greer wanted to sell his portion of his judgment, then pending on appeal in the Commonwealth Court, in order to receive cash immediately. Tr. Jan. 31, 2001, at 146–47. In the spring of 1999, Hochberg had telephone contact with Greer and the attorney representing the purchaser of Greer's judgment. Tr. Jan. 31, 2001, at 143–44. Greer needed information in order to arrange for the sale. Tr. Jan. 31, 2001, at 144. Based on his interactions with Hoch-

berg, the purchaser's attorney believed Hochberg was representing Greer. Dep. of Timothy Foley, at 20–21. It can be inferred that the H & L client, Jason Greer, similarly concluded that Hochberg was authorized to act as an attorney in the Commonwealth. Hochberg held himself out as authorized to practice law in the Commonwealth.

The question of the rights and responsibilities of an attorney operating in a jurisdiction in which he or she is not licensed to practice is the subject of national debate. The heightened attention stems from the perception that it is now increasingly common for an attorney to practice law in jurisdictions in which he or she is not a member of the bar, despite rules prohibiting such practice. *See* Diane L. Babb, *Take Caution When Representing Clients Across State Lines: The Services Provided May Constitute Unauthorized Practice of Law,* 50 Ala. L.Rev. 535, 535 (1999)("Attorneys engage in the unauthorized practice of law on a daily basis."). Proponents of reform of the rules prohibiting such practice claim that adequately representing clients in the modern, business economy requires an attorney to practice nationally. *See id.*

The American Bar Association ("ABA") is currently undertaking a comprehensive review of law governing multi-jurisdictional practice. The President of the ABA has appointed a Commission to study the issue and its ethical implications and develop a report and recommendation addressing how to regulate multi-jurisdictional practice. *See* ABA Commission on Multijurisdictional Practice, *available at* www.abanet.org/cpr/mjp-home.html. The Commission is considering safe harbor provisions for: (1) persons admitted pro hac vice; (2) work prior to expected pro hac vice admission; (3) in-house counsel; (4) work performed in connection with local counsel; and (5) work performed in connection with the representation of a client from the state in which the attorney is licensed.[4] *See id.* The Commission is also attempting to outline what actions should be forbidden, it has suggested that establishing an office in a state in which the attorney is not admitted to the bar may be proscribed.

Additionally, the ABA's comprehensive reevaluation of its Model Code of Professional Responsibility, the Ethics 2000 project, has recommended changes to address multi-jurisdictional practice. The amendments would permit an attorney licensed in one state to practice in another if the attorney is: (1) preparing for a proceeding in which he or she expects to be admitted pro hac vice; (2) acting on behalf of a client of whom he is an employee; (3) handling a matter "reasonably related" to his practice on behalf of a client in a jurisdiction where the lawyer is licensed; and (4) acting in conjunction with an attorney licensed in the jurisdiction with whom he is associated, so long as the local attorney is not merely serving as a conduit. *See* Model Rule 5.5, American Bar Association, Report of the Commission on Evaluation of the Rules of Professional Conduct, *available at* www.abanet.org/cpr/ethics2k.html.

This court must decide this action on present Pennsylvania law, and take custom and practice into account only to the extent it does not conflict with the decisional

---

4. The preliminary report of this Commission is scheduled to be released in November, 2001, but transcripts of public hearings held by the Commission are currently available. *See* ABA Commission on Multijurisdictional Practice, *available at* www.abanet.org/cpr/mjp-home.html.

law.[5] But the growing conflict itself supports this court's adherence to the standard articulated in *Ginsburg* and its finding that Hochberg unlawfully held himself out as licensed to practice in the Commonwealth. At a minimum, protection of the public requires that the members of the public be made aware of the credentials of any attorney in order to make an informed choice about his or her representation. *Cf.* Ohio Bd. of Grievances & Discipline, Op. 90–12 (attorney must make full disclosure of jurisdictional limitations of practice). An attorney has a duty to make all members of the public with whom he or she interacts professionally aware of his or her credentials. Any misleading, or even ambiguous, presentation of the attorney's name should be clarified by an unambiguous statement of the attorney's qualifications in order to prevent this allegedly "common practice" from becoming routinely deceptive.

### C. The Propriety of an Injunction:

■ Lundy seeks a permanent injunction precluding Hochberg from practicing law in Pennsylvania or holding himself out as authorized to practice law in the Pennsylvania unless and until he acquires a license to practice law in the Commonwealth. Hochberg contends that even if found to have violated § 2524 in the past, there is no evidence that violations will continue in the future, so issuance of an injunction is unnecessary and improper.

■ An injunction may only be issued if the unlawful actions are likely to recur; an injunction is inappropriate if the possibility of future harm is purely speculative. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (citations omitted). The decision whether injunctive relief is appropriate is analogous to Securities Exchange Commission actions seeking injunctive relief for violations of SEC rules. In such cases, the court must assess the likelihood of future violations, and the propriety of issuing an injunction, by evaluating the totality of the circumstances surrounding the violations, including: (1) the degree of scienter involved; (2) the isolated or recurrent nature of the violation; (3) the defendant's recognition of the wrongfulness of the conduct; (4) the likelihood, given the defendant's professional occupation, of future violations; and (5) the sincerity of his assurances against future violations. *See SEC v. Bonastia,* 614 F.2d 908, 912 (3d Cir.1980) (citations omitted).

Hochberg knew that aspects of his behavior were inappropriate; he acknowledged that he should not have been signing documents as Managing Partner when he was not licensed to practice law. Tr. Feb. 21, 2001, at 127. He was aware, as a general matter, that an attorney may not routinely involve himself in Pennsylvania litigation if he is not licensed to practice in the Commonwealth. Yet the evidence shows recurrent violations of § 2524.

Hochberg testified that, since the filing of this lawsuit, he has not engaged in any unlawful conduct. He stated he has not met with clients, participated in decisions concerning settlement or intake, or advised

---

5. The court observes that Hochberg likely violated even the proposed amendments to the standards suggested by the ABA. First, these standards only address attorneys licensed in some state; much of Hochberg's conduct occurred when he was not licensed to practice law anywhere. Second, after his suspension, he maintained and continues to maintain an office in Pennsylvania, although not licensed to practice here. Finally, although Hochberg might argue his conduct was justified because he always acted in conjunction with the attorneys of his firm licensed to practice in Pennsylvania, he directed these attorneys, so they were, at most, conduits.

the HND attorneys on case strategy. Tr. Feb. 23, 2001, at 152–53.

Hochberg's denials seem credible in light of his testimony that he has spent very little time in Pennsylvania since the initiation of the lawsuit. However, his future plan is to come more frequently to the Pennsylvania office of Haymond Napoli Diamond, P.C. He testified that he intends to work in the firm's Philadelphia office approximately three days every two weeks. Tr. Feb. 23, 2001, at 151. Hochberg did not specifically testify that he intended to continue to limit the scope of his work at the Philadelphia firm in the future. Indeed it will be difficult for Hochberg to do so.

A number of the former associates of H & L now work at HND–PA. These attorneys are accustomed to requesting advice from Hochberg on litigation strategy and may look to him to supervise their work. Under these circumstances, a reasonable likelihood exists that Hochberg will unauthorizedly practice law or hold himself out as able to practice law in the Commonwealth unless enjoined. Injunctive relief is appropriate.

A permanent injunction will prohibit Robert Hochberg from: (1) practicing law in Pennsylvania; or (2) holding himself out as licensed to practice law in Pennsylvania by listing himself as an attorney or noting his association with HND, or any other Pennsylvania law firm, on any instrument in Pennsylvania or subject to distribution in Pennsylvania, including, but not limited to, business cards, signs, or stationery, without clearly stating that he is "not licensed to practice in Pennsylvania,"[6] unless and until he either obtains the permission of a court to serve as an attorney in particular matter pending before it or

gains admission to the bar of this Commonwealth.

### III. Conclusions of Law:

1. This matter is governed solely by the 42 Pa. Cons.Stat. Ann. § 2524.

2. Hochberg unauthorizedly practiced law in Pennsylvania, both before and after the Connecticut court suspended his license to practice law in that state.

3. Hochberg unauthorizedly held himself out as an attorney licensed to practice law in the Commonwealth of Pennsylvania both before and after the Connecticut court suspended his license to practice law in that state.

4. Issuance of an injunction is appropriate.

5. The court will issue a permanent injunction prohibiting Robert Hochberg from: (1) practicing law in Pennsylvania; or (2) holding himself out as licensed to practice law in Pennsylvania by listing himself as an attorney or noting his association with HND, or any other Pennsylvania law firm, on any instrument in Pennsylvania or subject to distribution in Pennsylvania, including, but not limited to, business cards, signs, or stationery, without clearly stating that he is "not licensed to practice in Pennsylvania," unless and until he either obtains the permission of a court to serve as an attorney in particular matter pending before it or gains admission to the bar of this Commonwealth.

### ORDER OF PERMANENT INJUNCTION

AND NOW, this 31st day of August, 2001, for the reasons stated in the foregoing memorandum, it is **ORDERED** that Robert Hochberg is hereby **PERMANENTLY ENJOINED** from: (1) practic-

---

**6.** In light of Hochberg's prior misrepresentations, the statement that Hochberg is licensed to practice law only in Connecticut is insufficient.