**LYON et al. v. READING CO. et al.**

No. 7282.

District Court, E. D. Pennsylvania.

May 24, 1948.

David Berger and John W. Bohlen, of McBride, Lipschitz, Woolston, Berger & Bohlen, all of Philadelphia, Pa. (Eugene M. Kline, of New York City, of counsel) for plaintiff.

W. Wilson White and Thomas Raeburn White (of White, Williams & Scott) all of Philadelphia, Pa., for defendants Reading Co. and Atchison, T. & S. F. Ry. Co.

Manfred Landau, of Philadelphia, Pa., for defendant Chas. Benjamin, Inc.

T. BLAKE KENNEDY, District Judge Assigned.

The above entitled cause is an action to recover damages alleged to have been sustained by the plaintiffs in preparation for shipment and transportation of property by railroads. Issues were joined and the case was tried to the Court with a jury.

On the surface it appeared to be a rather simple law suit but developed into one of some complication, giving both the Court and counsel concern in the matter of its disposition.

The complaint was a joint charge against the trucker and rigger, Charles Benjamin, Incorporated, and the Reading Company, a Railroad Corporation, on the basis of a tort growing out of the alleged negligent crating and bracing of the machinery and equipment shipped in Interstate Commerce and also the statutory liability of the Railroad under the Transportation Act, 49 U.S. C.A. § 20(11), which makes the initial carrier liable for goods damaged in transit. It was also alleged and claimed by the plaintiffs that the railroad participated in the alleged negligent crating and bracing of the property. The shipment was made in two cars from Philadelphia to Phoenix, Arizona and there re-routed to Long Island

City, New York, the official business residence of the plaintiffs. The shipment was consigned by an agent of the plaintiffs to the same agent in Phoenix and when the shipment arrived there it was not unloaded but, at the direction of the plaintiffs to such agent, was routed to Long Island City. The testimony in the case seemed to indicate that one of the inspectors of the Reading Company at Philadelphia advised and assisted in the crating and placing of the goods in the cars preparatory to shipment and also testimony from both the rigger's employees and the railroad's employees that the goods were carefully and securely crated and braced in a workmanlike manner for shipment. When the shipment arrived in Long Island City, however, and was received by the plaintiffs, inspectors there at the time of unloading the shipment found that it had been severely damaged. At Phoenix, Arizona, the goods were not unloaded nor were they taken out of the possession of the railroad, one of the connecting carriers with the defendant company, but the seal was broken and a small box of tools or material was inserted in the car with the original shipment to Long Island City. When the agent of the plaintiffs at Phoenix was requested by the Railroad to dispose of the shipment, after receiving advice from his principal in Long Island City to have it shipped to that point, said agent, obeying the instructions of the Railroad Company, signed a number of papers which he claims not to have understood but which proved to be new bills of lading. Witnesses also testified to the damage to the shipment.

When the evidence had been completed, the Court and counsel were equally concerned with the best method of submitting the case to the jury for determination. Upon suggestion of the Court, counsel agreed that it might be submitted on written interrogatories as to their finding upon specific facts. Both counsel for plaintiffs and defendants, however, reserved exception to the first interrogatory upon the ground that it involved a question of law for the Court and no question of fact for the jury. Such interrogatories and answers thereto of the jury are quoted as follows:

"1. Did the transaction which took place at Phoenix, Arizona, resulting in the shipment of the two cars in controversy from Phoenix to Long Island City, constitute a diversion or re-consignment within the meaning of the tariff regulations as interpreted by the evidence introduced in this case? Answer: No.

"2. Were the cars at the origin of the shipment at Philadelphia negligently loaded by being ineffectively packed, blocked, skidded and braced in a shipable and workmanlike manner? Answer: No.

"3. Did the employees of the Reading Company participate in the loading of such cars so it may become jointly liable with the co-defendant Charles Benjamin, Inc., in any loading requirements? Answer: Yes.

"4. What, if any, damage in dollars was suffered by the plaintiffs as a result of the injury to the plaintiffs' shipment? Answer: $4820."

It will be noted that the jury found upon the first interrogatory that there was no reconsignment or diversion which, if sustained, would relieve the initial carrier of liability because of the fact that it became an original shipment from Phoenix to Long Island City.

As to the second and third interrogatories, it found from the evidence that while the defendant Reading Company participated in the loading of the car so that it might become jointly liable with the rigger defendant Charles Benjamin Company, yet they found in answer to interrogatory No. 2 that the shipment was not negligently loaded at Philadelphia. The fourth interrogatory related to the amount of damages which the jury assessed at $4820.00.

The principal battle between counsel arose over the first interrogatory and its answer and the matter was heard on a motion for a judgment by plaintiffs upon the theory that the matter there to be determined was one of law for the Court and that the answer of the jury to the effect that it was not a reconsignment was in no way binding upon the Court. Both sets of counsel were promised, however, in advance, that upon whatever judgment the

Court rendered upon the verdict of the jury, they would be allowed to file an appropriate motion to have the same again reviewed. Upon the hearing then had, I concluded that the question of whether the shipment was in the nature of a re-consignment or a new shipment, from Phoenix to Long Island City, was a question of law for the Court, inasmuch as the facts surrounding what happened at Phoenix were not in dispute in the testimony, that therefore all questions of fact had been eliminated. The interrogatory in regard to whether or not there was negligence on the part of the rigger and the railroad in the preparation of the equipment for shipping was answered in the negative, therefore the judgment should be in accordance with that finding. The element of damage to the equipment fixed by the jury was accepted without dispute. The Court then determined, after arguments and briefs had been presented, that the shipment and what happened at Phoenix was in the nature of a reconsignment and not a new shipment of the property from Phoenix to Long Island City and entered judgment absolving Charles Benjamin, Incorporated from liability and awarding damages in the amount fixed by the jury to the plaintiffs against the defendant Reading Company. The defendant Reading Company has filed a motion to set aside that judgment and enter a judgment for the defendant, which motion in effect brings up the same matter which was considered shortly after the close of the trial.

■ The plaintiffs have also filed a motion to set aside the judgment and to grant a new trial against the defendant Charles Benjamin, Incorporated, upon the ground of newly discovered evidence. The latter motion is supported by affidavits as to what is called "newly discovered evidence" but, in my view, it is not sufficient to justify the Court in sustaining it. All the matters pertaining to the preparation of the shipment and what, if anything, occurred between Philadelphia and Phoenix in connection with that shipment were available to both parties before the trial. The motion will accordingly be overruled.

■ As to the first above mentioned motion, I shall adhere to my original conclusion that the judgment was properly entered against the defendant Reading Company upon the ground that the transaction at Phoenix was in the nature of and in substance a reconsignment rather than a new shipment which, under the Transportation Act makes the original carrier responsible. I shall not discuss in detail the many cases, both those before the I. C. C. and the Courts, which have passed upon similar transactions and in which they have at times seemed not to be in complete harmony. It seems, however, by a rather consistent line of authorities decided by the Commission itself that they have construed the term "reconsignment" in a broad sense and that it should be so interpreted unless there is a complete interruption in the shipment which makes it impossible or inequitable to apply the reconsignment rule. At Phoenix there was no unloading of the shipment, which would be one of the principal grounds to prohibit reconsignment, and the property was at all times in possession of the carrier at that point. The mere matter of making out new bills of lading has no particular significance because it was shown that the consignee and agent of the plaintiffs did whatever he was told and signed whatever papers were presented to him by the Railroad Company without knowing anything in regard to their legal significance. The defendant Railroad Company strenuously argues that the rules and regulations concerning "breaking bulk" and "back-haul," as shown by the evidence in the case, prohibit the application of the rules and regulations concerning reconsignment but as these rules have been explained, I do not consider them to be construed here as standing in the way of adopting the theory of reconsignment. It would serve no useful purpose in this memorandum, and neither is the time available, to discuss at length the theories which have been proposed by counsel upon their respective motions or the mass of authorities which have been submitted to the Court in their trial briefs. This is a case which will probably find its way into the higher Courts on account of the principle rather than the amount involved.

It appears also that the plaintiffs, being in a quandary as to where they stand in

their effort to secure compensation for damage to their property, have likewise brought a suit in the Courts of New York to recover from the receiving carrier there which, of course, is a precaution against a determination that the shipment from Phoenix to Long Island City was in the nature of a new shipment and therefore the initial carrier at Philadelphia would not be liable unless proof were shown that the damage occurred between Philadelphia and Phoenix and there was no evidence introduced in this case which justifies such a conclusion.

It is to be hoped that there may be some collaboration between the Courts by which the interests of the plaintiffs may be protected until the principal point in controversy can be determined. That principal point is whether or not the shipment was a reconsignment within the terms of the Transportation Act.

For the reasons stated the motion of defendant Reading Company to set aside the judgment and enter judgment in its favor is likewise overruled. The Clerk may enter orders in accordance with the rulings made in this memorandum unless counsel desire to have signed orders. In that event, counsel may prepare orders and submit them to me for the purpose of execution.