SAMMY HARTHMAN, Appellant

v.

ARTHUR WITTY (doing business as ARTHUR WITTY FORT MYLNER SHOPPING CENTER)

No. 72-1711

United States Court of Appeals

Third Circuit

Argued at Christiansted January 30, 1973

Filed June 19, 1973

---

THOMAS W. FINUCAN, ESQ. (BORNN, MCLAUGHLIN & FINUCAN), St. Thomas, V.I., *for appellant*

ROGER L. CAMPBELL, ESQ. (LOUD & CAMPBELL), St. Thomas, V.I., *for appellee*

Before MARIS, VAN DUSEN and HUNTER, *Circuit Judges*

### OPINION OF THE COURT

MARIS, *Circuit Judge*

The plaintiff, Sammy Harthman, appeals from an order entered in the District Court of the Virgin Islands denying his motion for an assessment of damages at the rate of $50.00 per day against the defendant, Arthur Witty, for allegedly, in violation of an injunction, continuing to pollute a stream known as Turpentine Run. The controversy arises out of the following facts:

The plaintiff is the owner of land in Estate Charlotte Amalie in St. Thomas which he uses for the raising and pasturing of cattle. A stream, Turpentine Run, runs through the plaintiff's land and he uses it to water his cattle. The defendant has a long-term leasehold interest in premises near Turpentine Run on which is a complex known as the Fort Mylner Shopping Center. The defendant owns and operates a sewage treatment plant to treat the sewage of the shopping center, the effluent from which flows into Turpentine Run above the plaintiff's land. Alleging that the defendant was causing to be discharged into Turpentine Run sewage and poisonous, putrescent and noxious materials which polluted the stream and prevented the use of it to water his cattle, the plaintiff on September 24, 1969 brought suit against the defendant in the district court for an injunction and damages. Following a trial the court found that the defendant had been grossly negligent in knowingly operating an inadequate sewage treatment

plant, which was designed to process 3,000 gallons of sewage per day but which was actually receiving from the occupants of the complex about 13,000 gallons per day. The discharge into Turpentine Run of the insufficiently processed effluent from the treatment plant, the court found, was polluting the stream and rendering its water unfit for consumption by the livestock of the plaintiff, thus interfering with his right as a lower riparian owner to receive the water in its natural purity and causing him damage. Accordingly, on May 13, 1971, the district court entered a judgment awarding damages, costs and attorney's fees to the plaintiff and permanently enjoining the defendant "from further polluting or continuing to pollute the stream or water course known as 'Turpentine Run'. " The judgment further provided that "Plaintiff shall be entitled to recover from Defendant the sum of $50.00 for each and every day that the pollution is allowed to continue from the date" of the judgment. The defendant thereupon paid the damages, costs and attorney's fees thus assessed against him.

On July 1, 1971, less than two months after the entry of the judgment granting a permanent injunction against further pollution of Turpentine Run by the defendant, the plaintiff filed a motion for an award of damages at the rate of $50.00 per day, asserting that pollution of the stream was continuing. After a hearing on the motion the court on November 10, 1971 entered an order denying it and on June 16, 1972 denied a motion for reconsideration of that order. The appeal now before us followed.

The court's action in denying the motion for damages was predicated on the following grounds. The court found that in the interim between the granting of the injunction and the filing of the plaintiff's motion, the defendant had rectified the situation about which the plaintiff had initially complained by adding a new treatment plant for the disposal of the additional waste from the defendant's prop-

erty. Assuming, as the plaintiff alleged, that there was some current pollution caused by the improper operation of the new plant, the court did not view this as a continuation of the pollution previously enjoined, or think that the defendant was currently wantonly polluting the stream with full knowledge thereof and without making any attempt to correct the situation. Thus, the court held, the basis on which it had imposed the $50.00 per day penalty no longer obtained.

At the hearing on the motion it appeared that because a certain line had clogged at the new plant, water was being discharged into the stream from that plant containing more soapy waste than was within tolerable limits. It further appeared that this line had subsequently been unclogged and that the plant should thereafter be operating with the expected degree of efficiency. The court concluded that if that should be the case there was no need to consider whether a second injunction was needed, but that if the malfunction of the new plant should continue, it would be necessary for the plaintiff to institute a new and different action to restrain that pollution. The plaintiff could not rely, concluded the court, on a judgment based on one set of facts on which the court made certain findings and drew certain conclusions and exact the same damages and penalties in this new situation.

Thus the district court's action was based on its conclusion (1) that the permanent injunction which it had entered applied only to the pollution originally complained of by the plaintiff and that if new and different pollution should take place a new injunction would have to be sought by the plaintiff, and (2) on its view that in any event the penalty of $50.00 per day which it had provided for in the original judgment was applicable only to a continuance of the original pollution and did not apply to a new situation.

We think that the district court took too narrow a view in reaching its conclusion that the permanent injunction which was outstanding in this case applied only to the pollution of which the plaintiff originally complained. For the injunction was a permanent one and was drawn in the broadest terms. The defendant was "permanently enjoined from further polluting or continuing to pollute the stream or water course known as 'Turpentine Run'." While it is perfectly clear that a court of equity retains jurisdiction of a cause in which it enters a permanent preventive injunction and may at any later time modify or vacate the injunction if it is just and equitable to do so,[1] even though that right has not been expressly reserved in the judgment,[2] it follows as a necessary corollary that until thus modified or vacated a permanent injunction continues to be binding accordance with its terms upon those to whom it is directed and must be obeyed in spirit as well as in letter.[3] Here, as we have seen, the injunction was in the broadest terms. The defendant was permanently enjoined by it from further polluting or continuing to pollute. This clearly prohibited the defendant from causing any and all pollution of Turpentine Run of any kind and from whatever source, so long as the injunction remained in force, as it has continued to do, in unmodified form. Under these circumstances a second injunction was unnecessary and it would have been the duty of the court to refuse to grant it.[4] We conclude, therefore, that the court erred in holding that the existing injunction

---

[1] Ladner v. Siegel, 1930, 298 Pa. 487, 494–497, 148 A. 699, 701–702; United States v. Swift & Co., 1932, 286 U.S. 106, 114–115; System Federation v. Wright, 1961, 364 U.S. 642, 647–648; Annotations 68 A.L.R. 1180, 136 A.L.R. 765; 42 Am. Jur. 2d, Injunctions § 334.

[2] United States v. Swift & Co., 1932, 286 U.S. 106, 114; Humble Oil & Refining Company v. American Oil Co., 8 Cir. 1969, 405 F.2d 803, 812.

[3] Howat v. Kansas, 1922, 258 U.S. 181, 190; 42 Am. Jur. 2d, Injunctions § 336; 43 C.J.S. Injunctions § 215.

[4] Howard v. St. Louis-San Francisco Railway Company, 8 Cir. 1966, 361 F.2d 905, cert. den. 385 U.S. 986; 42 Am. Jur. 2d Injunctions § 321; 43 C.J.S. Injunctions § 27(b).

did not prohibit the new type of pollution of which the plaintiff complained in his motion of July 1, 1971 and that a new suit would have been required to secure relief with respect to it.

This is not to say, however, that the court was required, if it found such pollution to have continued in violation of the injunction, to impose, without more, the penalty of $50.00 per day provided by the original judgment. The court stated that this penalty had been fashioned in the light of the gravity of the defendant's original pollution and was intended to be imposed only if that particular pollution continued. We are satisfied that the court did not err in holding that this per diem penalty was not necessarily applicable to a new and different pollution such as that alleged by the plaintiff in his motion of July 1, 1971. For the fashioning by a court of equity of the remedy for the violation of an injunction, whether by way of imposition of a penalty for contempt or otherwise, is a matter peculiarly within the discretion of the court to be determined in the light of the gravity and wilfulness of the particular violation complained of and the resulting injury to the property and right of the plaintiff,[5] and is not to be determined absolutely by a penalty which may have been prescribed in the original judgment for its violation.[6]

We conclude that the order denying the plaintiff's motion for the imposition of damages for the defendant's alleged subsequent pollution should be vacated and the cause remanded to the district court to determine after hearing whether the defendant continued to pollute Turpentine Run after May 13, 1971 the date of the permanent injunction banning further pollution of the stream by him and, if so, to determine and apply such remedy for the vio-

---

[5] Yanish v. Barber, 9 Cir. 1956, 232 F.2d 939, 944; 43 C.J.S. Injunctions § 276.
[6] Lawton v. Herrick, 1910, 83 Conn. 417, 76 A. 986.

lation as it may deem appropriate and just under all the circumstances.

The order of the district court entered November 10, 1971 will be vacated and the cause remanded for further proceedings not inconsistent with the opinion of this court.