**John HAYMOND, Haymond Napoli Diamond, P.C.**

v.

**Marvin LUNDY,**

v.

**John Haymond, Robert Hochberg, Haymond Napoli Diamond, P.C.**

No. 99–5048.

United States District Court, E.D. Pennsylvania.

Jan. 2, 2002.

Martin Heller, Special Master, Philadelphia, PA, pro se.

Peter J. Hoffman, McKissock & Hoffman, P.C., Philadelphia, PA, M. Melvin Shralow, White and Williams, Philadelphia, PA, Judah I. Labovitz, Deborah H.

Bjornstad, Mann, Ungar and Spector, P.A., Philadelphia, PA, Geoffrey Hazard, Swarthmore, PA, for Haymond Napoli & Diamond, John Haymond, plaintiffs.

Timothy Burke, McKissock & Hoffman, P.C., Philadelphia, PA, for David Easterly, movant.

Howard M. Klein, William J. O'Brien, Conrad, O'Brien, Gellman & Rohn, P.C., Philadelphia, PA, for Robert Hochberg, movant.

Jack J. Bernstein, Hochberg, Napoli, Diamond, Philadelphia, PA, for Andrew Napoli, Jack Bernstein, David Berman, movants.

Robert C. Daniels, Robert C. Daniels, Ltd., Philadelphia, PA, for Donald F. Manchel, movant.

Judah I. Labovitz, Mann Ungar Spector & Labovitz, Philadelphia, PA, Geoffrey Hazard, Swarthmore, PA, for Scott E. Diamond, defendant.

L. Leonard Lundy, Kaplin, Stewart, Meloff, Reiter and Stein, P.C., Blue Bell, PA, Paul R. Rosen, Bruce L. Thall, Alan B. Epstein, David B. Picker, Spector Gadon & Rosen, Philadelphia, PA, for Marvin Lundy, defendant.

### MEMORANDUM AND ORDER

SHAPIRO, Senior District Judge.

In this action arising out of the dissolution of the law partnership of Haymond and Lundy, LLP, ("H & L"), judgment was entered on a jury verdict for John Haymond ("Haymond") and against Marvin Lundy ("Lundy"), on August 31, 2001.[1] The court also issued a permanent injunction prohibiting Robert Hochberg ("Hochberg") from practicing, or holding himself out to practice law, in this Commonwealth.[2]

Timely post-trial motions followed: Lundy's Motion for a New Trial, Mistrial, or Modification (# 310) of the Judgment Opinion; Lundy's Motion for "Specification" (# 326) of the Injunction; and Hochberg's Motion for Post–Trial Relief from the Injunction (# 308). The court held oral argument on November 16, 2001, and now denies each of these post-trial motions. The court also resolves a motion to intervene filed by Don Manchel ("Manchel"), a former partner of Lundy. There are other pending motions to be addressed by the court after the filing of this opinion and order.[3]

### I. Background

The facts and procedural history of this action are comprehensively set forth in three of the court's previous opinions: Judgment Opinion, 1–8; the Injunction Opinion, 1–13; *Haymond v. Lundy*, No. 99–5015 & 99–5048, 2000 WL 804432, *1–4 (E.D.Pa. June 22, 2000).

---

1. *See John Haymond et al. v. Marvin Lundy et al.*, 177 F.Supp.2d 371 (E.D.Pa.2001), (hereinafter "Judgment" or "Judgment Opinion") (entered September 4, 2001).

2. *See John Haymond et al. v. Marvin Lundy et al.*, 174 F.Supp.2d 269 (E.D.Pa.2001) (hereinafter "Injunction" or "Injunction Opinion") (entered September 4, 2001).

3. On September 17, 2001, Lundy filed a petition for the costs and attorney's fees incurred during the Injunction action against Hochberg. (# 311). On November 16, 2001, the Court denied this motion without prejudice because there was insufficient documentation. *Order*, November 21, 2001, ¶ 2 (# 336). Lundy has since resubmitted a fee petition. Lundy has also filed a motion (# 342) to disqualify Mann, Ungar, Spector & Labovitz, counsel to Haymond. *Sua sponte*, the court issued a rule to show cause why each of the parties is not in contempt of one of its recent orders, issued November 21, 2001. This is the ninth contempt proceeding before the court in this action, *see Judgment*, at 38.

## II. Discussion

### A. Lundy's Omnibus Post–Trial Motions # 310–1, –2, and –3

Lundy cites to neither authority nor federal rule in his Omnibus Post Trial Motions.[4] The court has construed these motions as having two grounds. First, Lundy seeks a new trial under F.R.C.P. 59(a).[5] Second, Lundy seeks a modification of judgment under F.R.C.P. 59(e).

#### 1. F.R.C.P. 59(a) Motion for a New Trial

Lundy's F.R.C.P. 59(a) motion argues the trial was flawed because Haymond's counsel argued to the jury that his client wished to enforce the Partnership Agreement ("Agreement"), but after trial argued to the court that the firm's resources should be distributed under the Uniform Partnership Act ("UPA") instead. Lundy alleges that had his counsel known of Haymond's real demand, the trial strategy and the outcome would have been different, because Haymond concealed this strategic decision to portray himself to the jury in a more favorable light than was warranted by the facts.

■ Lundy does not attack the sufficiency of the evidence. Cf. Blum v. Witco Chemical Corp., 829 F.2d 367, 372 (3d Cir.1987) (jury verdict upheld when reasonable basis exists for verdict). Rather, he cites to what he perceives to be misconduct by Haymond and his counsel. In these circumstances, a new trial is warranted under F.R.C.P. 59 only when "improper assertions have made it 'reasonably

probable' that the verdict was influenced by prejudicial statements." Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 207 (3d Cir.1992) (citations omitted), cert. denied, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993). Lundy has the burden of meeting this test.

Here, Lundy can establish neither misconduct nor prejudice. The purported misconduct was Haymond's argument to the jury that the partnership should be dissolved according to the Agreement, but later arguing to the court that dissolution should occur under the UPA. Utilizing the UPA would have provided Haymond with a significantly greater share of partnership assets than he will receive under the Agreement.

■ Lundy's argument that had the jury known of Haymond's later contention it would not rendered judgment against Lundy is frivolous. First, the jury was exposed to Lundy's argument that Haymond wanted more than his share of the partnership assets, even though this argument was irrelevant to the issues before the jury. See Tr., January 25, 2001, at 164, 175 (Lundy's closing argument to the jury). Second, the court bifurcated the liability and damage phases of the action: at no time was the jury deciding to award damages for any party. It was contemplated that after the jury verdict the parties would argue to the court its effect on damages. Third, Haymond did argue to the court that Lundy's material breach made the Agreement a nullity, see Tr.,

4. He does incorporate by reference an earlier mistrial motion.

5. Lundy labels his motion as a "renewed motion for mistrial or new trial." Lundy first made a motion for mistrial in March, 2001. The court denied this motion without prejudice on May 17, 2001, with leave to renew on entry of judgment. A motion for a new trial functions as a post-trial mistrial motion. In the absence of any suggestion from Lundy his renewed mistrial motion is distinct from his motion for a new trial, the court treats the renewed motion for mistrial and the motion for a new trial as the same motion under F.R.C.P. 59(a).

January 25, 2001, at 192-194, so Lundy did have notice of Haymond's intention to seek an equitable division of the partnership assets among the parties. Lundy has cited no authority in his post-judgment motions, and no relevant authority in the earlier Motion for Mistrial,[6] to establish misconduct in these circumstances.

Even if there were misconduct, Lundy suffered no prejudice. In the Judgment Opinion, the court rejected Haymond's argument that the partnership should be liquidated according to the UPA. *See Judgment,* at 9–15. The relief awarded was then "determined by examining dissolution under the Partnership Agreement and addressing each breach found by the jury and how it effects those terms." *Judgment* at 14–15.

Because Haymond's post-trial strategy won him nothing, Lundy suffered no prejudice under F.R.C.P 59(a). *See* F.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *see also* 11 Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure 2d* § 2805 ("[I]t is only those errors that have caused substantial harm to the losing party that justify a new trial. Those errors that are not prejudicial do not call for relief under Rule 59"). This is a case of, at best, harmless error. *See McQueeney v. Wilmington Trust Co.,* 779 F.2d 916, 917 (3d Cir.1985) (holding error is harmless when there is a "high probability" it did not affect the outcome of the action).

■ Finally, it is not "reasonably probable" Haymond's allegedly duplicitous trial strategy led to the jury's verdict in his favor. Lundy's claim the jury would have found for him had it known of Haymond's true demands is fanciful speculation in view of the evidence at trial. There was substantial evidence, credited by the jury, supporting Haymond's assertion Lundy was the first to breach the Agreement. *See, e.g., Judgment,* at 6–8, 19–23. To the extent there was a "reasonable basis" for the jury verdict, it must be upheld. *See Blum,* 829 F.2d at 372. The verdict does not shock the conscience of the court and a new trial on liability will not be granted.

### 2. *Rule 59(e) Reconsideration*

Lundy petitions the court, in the alternative, to amend the judgment to: (1) require Haymond to "zero out" his Capital Account; and (2) transfer to Lundy all fees from ML & L cases handled by Haymond post-dissolution.

■ Because Lundy asks the court to amend its judgment, in part, *see Judgment,* at 18, 30–35, F.R.C.P. 59(e), and not F.R.C.P. 59(a), applies. A motion for reconsideration will be granted if: (1) new evidence becomes available; (2) there has been an intervening change in controlling law; or (3) a clear error of law or manifest injustice must be corrected. *See NL Indus. v. Commercial Union Ins. Co.,* 65 F.3d 314, 324 n. 8 (3d Cir.1995); *Jubilee v. Horn,* 959 F.Supp. 276, 278 (E.D.Pa.1997); *Smith v. City of Chester,* 155 F.R.D. 95, 96–97 (E.D.Pa.1994). Motions for reconsideration are not to be used to reargue or relitigate matters already decided. *See Waye v. First Citizen's Nat'l Bank,* 846 F.Supp. 310, 314 n. 3 (M.D.Pa.), *aff'd,* 31 F.3d 1175 (3d Cir.1994). Lundy does not meet this burden.

---

**6.** Lundy himself admits he "found no cases directly in point...." *Mem. in Support of* *Motion for Mistrial,* at 1.

Lundy first argues that Haymond must "zero out" his Capital Account rather than have its balance credited to him. *Cf. Judgment*, at 18 (requiring Haymond to be paid the balance of his account, if any, at liquidation). Whether Haymond's Capital Account contains a positive balance, requiring repayment under the Judgment, or a negative one, as presumed by Lundy, is yet to be determined by the Receiver and approved by the court on a final accounting of former partnership debts and liabilities. This issue is not ripe until the Receiver presents a supplemental report, objections have been heard and ruled on, and a final judgment entered.

Second, Lundy reargues a matter decided by the court in paragraph 3[F] of its order, and in its Judgment at page 30–32. There, the court held that:

Net fees received by Haymond, or his new firm, from ML & L [Manchel, Levin and Lundy] cases settled or litigated to verdict shall be placed in escrow. These fees shall be distributed 80% to Haymond, or his new law firm, and 20% to Lundy, or his new law firm. . . .

Lundy believes that this ruling transfers to Haymond fees the Agreement reserves for Lundy. However, he provides no new evidence for interpretation of the Agreement or new authority resulting in a conclusion different from that reached by the court: he articulates no reason why the court's judgment results in manifest injustice. Lundy's position, if accepted, would allow him to recover all fees from cases litigated by Haymond after dissolution, even though former H & L clients chose Haymond personnel as their lawyers. *Cf. Kenis v. Perini Corp.*, 452 Pa.Super. 634, 682 A.2d 845, 849 (1996) (clients have absolute right to terminate attorney-client relationship in Pennsylvania).

Lundy also argues that because Haymond is not now practicing law in Pennsyl-vania, he is prohibited under § 9.02(e)(I)(B) of the Agreement from recovering fees on the ML & L cases. This argument was not made during or after the trial, and may not be raised on post-trial motions. *See Federal Deposit Ins. Corp. v. World University, Inc.*, 978 F.2d 10, 16 (1st Cir.1992) ("Rule 59(e) motions are 'aimed at *re* consideration, not initial consideration'") (citations omitted) (emphasis in original).

The Motion for Reconsideration will be denied.

### B. Hochberg's Motion for Post–Trial Relief (# 308)

 Hochberg moves for a new trial under F.R.C.P. 59(a) of the decision enjoining him from practicing law in Pennsylvania, or holding himself out as a lawyer here. The standard for granting a F.R.C.P. 59(a) motion is the same whether applied to a bench or jury trial. *See Compass Tech. v. Tseng Labs.*, 71 F.3d 1125, 1131 (3d Cir.1995). The court should grant a new trial if the verdict is so clearly contrary to the weight of the evidence to create a "miscarriage of justice" if the verdict is allowed to stand. *Williamson v. Conrail*, 926 F.2d 1344, 1346 (3d Cir.1991). Hochberg argues that this standard is satisfied in three ways: (1) the court lacked subject matter jurisdiction; (2) there was insufficient evidence of future harm to justify a permanent injunction; and (3) Lundy's hands were unclean.

#### 1. *Subject Matter Jurisdiction*

Hochberg argues that this court should not have exercised supplemental jurisdiction under 28 U.S.C. § 1367 over the unauthorized practice cause of action. Shortly before the non-jury trial on this issue began, Haymond withdrew the Lanham Act claim creating federal question jurisdiction in the underlying action: the court re-

tained jurisdiction over the underlying action, and over the state law unauthorized practice claim, under 28 U.S.C. § 1367. Hochberg renews his argument that the court should have declined to exercise supplemental jurisdiction.[7]

■ When Haymond's Lanham Act claim was withdrawn, the court still had discretion to exercise jurisdiction over the remaining part of the action. *See* 28 U.S.C. § 1367(c) (the district courts "may decline" to exercise jurisdiction for the reasons stated therein but is not required to do so). Hochberg's principal claim is that the state law issues raised were novel and complex, and therefore inappropriate subjects for supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(1) (novelty and complexity of state law claim are factors permitting a court to refrain from exercising jurisdiction).

Hochberg claims the court made a novel ruling on state law when it held that being a managing partner of a Pennsylvania law-firm is equivalent to practicing law here, in violation of 42 Pa. Cons.Stat.Ann. § 2524. He cites to the court's opinion:

> The question of the rights and responsibilities of an attorney operating in a jurisdiction in which he or she is not licensed to practice is the subject of national debate. The heightened attention stems from the perception that it is now increasingly common for an attorney to practice law in jurisdictions in which he or she is not a member of the Bar, despite rules prohibiting such practice. *Injunction,* at 24.

■ The court did not suggest the issues implicated in this action were novel ones in Pennsylvania. To the contrary, the court explicitly applied the well established precedent of *Ginsburg v. Kovrak,* 11 D. & C.2d 615, 617 (PA.Com.Pl.1957), *aff'd,* 392 Pa. 143, 139 A.2d 889 (1958), in finding Hochberg unlawfully held himself out as licensed to practice in the Commonwealth. *See Injunction,* at 26. The court's discussion of the ferment about legal practice was meant to explain to members of the bar, and the public at large, how adhering to the principals of *Ginsburg* and like authority relates to the ongoing national debate about multi-disciplinary practice. The court made no new state law: it enforced the current law of the relevant jurisdiction.

Hochberg also attempts to distinguish the three principal cases cited by the court: *Shortz v. Farrell,* 327 Pa. 81, 193 A. 20 (1937); *Dauphin County Bar Asso. v. Mazzacaro,* 465 Pa. 545, 351 A.2d 229 (1976); *Stone v. Kasuba (In re Stone),* 166 B.R. 269 (Bankr.W.D.Pa.1994). The court has already articulated how these cases long ago established Pennsylvania law with respect to Hochberg's conduct: it will not do so again.

The court has already twice stated why it exercised its discretion to retain supplemental jurisdiction over the unauthorized practice claims. *See Injunction Opinion,* at 13; *Haymond v. Lundy,* No. 99–5048, 2000 WL 1824174, at *2 (E.D.Pa. Dec. 12, 2000). Hochberg's argument for overturning these decisions does not meet the standard under F.R.C.P. 59.

### 2. Sufficiency of the Evidence

Hochberg argues there was insufficient evidence to establish he would practice law in Pennsylvania, but Hochberg's future plan, in August, was to come to the Pennsylvania office of HN & D more often. Tr.

---

7. Although this issue was not briefed, the court might have diversity jurisdiction over this claim under 28 U.S.C. § 1332.

Feb. 23, 2001, at 151. The attorneys at that office are accustomed to taking direction from Hochberg. The court concluded that it would be difficult for Hochberg to refrain from practicing law in the Commonwealth or holding himself out to practice here. This conclusion was reinforced by trial testimony, credited by the court, by Hochberg that he knew his past behavior was illegal but did not refrain from continuing to hold himself out as a Pennsylvania attorney. Tr. Feb. 21, 2001, at 127.

 In support of his motion, Hochberg submits an affidavit in which he promises to refrain from the conduct prohibited by the court. However, this affidavit must be considered in the light of: (1) the court's discrediting Hochberg's trial testimony, *see Injunction,* at ¶ 37; and (2) his ability to submit this very evidence at the original trial. *See Lyon v. Reading Co.,* 83 F.Supp. 332, 334 (D.Pa.1948) (affidavits supplying evidence available to parties at time of trial insufficient to justify new trial). This affidavit provides little if no support for Hochberg's motion. As Lundy argues, if Hochberg now forswears what the injunction prohibits, one may fairly wonder about the substance and sincerity of his challenge.[8] .

Second, Hochberg argues that because other attorneys in Philadelphia practice here without being admitted to practice in Pennsylvania, the court's injunction provides the "appearance that the laws regulating the practice of law in this Commonwealth are selectively enforced." *See Mem. in Support of Post–Trial Relief,* at 24. This evidence was available to Hochberg at trial, and can not be submitted for

the first time now. Even if it were not, proof that other attorneys in Philadelphia act in the same illegal ways as Hochberg would not mean that Hochberg should avoid the consequences of his conduct. 42 Pa. Cons.Stat.Ann. § 2524. does not include a defense of "but they do it too."

Finally, Hochberg argues there was insufficient evidence that several of his activities as a managing partner at HN & D involved legal advice. The court has considered this argument, but it does not satisfy the F.R.C.P. standard, because of the weight of the trial evidence as a whole.

### 3. Unclean hands

 Finally, Hochberg contends Lundy may not seek relief because the doctrine of unclean hands requires a party applying for equitable relief to be free from bad conduct relating to the acts at issue. *See Shapiro v. Shapiro,* 415 Pa. 503, 204 A.2d 266, 268 (1964); *see also Highmark, Inc. v. UPMC Health Plan, Inc.,* 276 F.3d 160, 174 (3d Cir.2001)(declining to apply doctrine). Lundy, it is alleged, aided and abetted unauthorized practice himself while practicing at ML & L and H & L. However, Lundy did not seek relief on behalf of himself, but as a private attorney-general acting under color of a state statute created to protect the public from the unauthorized practice of law. Unclean hands is an equitable doctrine, and will not be applied to hurt innocent parties or the public. *Id; Cf. In re Francis Edward McGillick Found.,* 406 Pa.Super. 249, 594 A.2d 322, 329 (1991) (no abuse of discretion in not applying doctrine where it would have adversely affected innocent third parties). The court will not

---

**8.** The court would dissolve its injunction on proof Hochberg has been admitted to the Pennsylvania Bar. The court takes judicial notice of the next Pennsylvania Bar Exam: February 26–27, 2002. The court retains jurisdiction to modify or vacate its injunction should Hochberg submit other persuasive, relevant, evidence. *See Harthman v. Witty,* 480 F.2d 337, 339 (3d Cir.1973).

vacate the injunction based on an unclean hands argument.

Hochberg's Motion for a New Trial will be denied.

### C. Lundy's Motion to Specify the Injunction (# 326)

Lundy moves to make more specific the injunctive relief to prohibit Hochberg from: (1) acting as managing partner of HND–Pa, Hochberg Napoli Diamond, or any other Pennsylvania law firm; (2) allowing his name ("Hochberg") to be used in a Pennsylvania law firm; and (3) advertising or causing his name to be a part of a law firm name in connection with the practice of law in Pennsylvania. This motion will be denied.

Lundy seeks to have Hochberg prohibited from serving as managing partner of any Philadelphia law firm. The court's order of August 31, 2001, did not prohibit Hochberg from serving as managing partner.[9] There is no evidence that Hochberg's conduct at HN & D violated the court's order after August 31, 2001. The court intends to enforce the provision of its order enjoining Hochberg from "practicing law" as it defined that term in its opinion, but the court declines to act prophylactically by amending its injunction now.

Lundy's second complaint is that Hochberg has allowed his name to be used as part of the new, fictitious, name of HN & D Pennsylvania: Hochberg Diamond and Napoli ("HoND–Pa"). Lundy argues that this fictitious name registration, and any advertisements distributed in-state by HoND–Pa, constitute: (1) the practice of law in Pennsylvania; and (2) Hochberg's holding himself out for practice here.

The injunction order stated, in relevant part:

[I]t is **ORDERED** that Robert Hochberg is hereby **PERMANENTLY ENJOINED** from: (1) practicing law in Pennsylvania; or (2) holding himself out as licensed to practice law in Pennsylvania by listing himself as an attorney or noting his association with HND, or any other Pennsylvania law firm, on any instrument in Pennsylvania or subject to distribution in Pennsylvania, including, but not limited to, business cards, signs, or stationery, without clearly stating that he is "not licensed to practice in Pennsylvania," unless and until he either obtains the permission of a court to serve as an attorney in particular matter pending before it or gains admission to the bar of this Commonwealth. Order, August 31, 2001 (# 302).

■ Hochberg argues he has not practiced law in violation of the court's order by allowing his name to be used in HoND–Pa. Common sense suggests this is correct. The registration or advertisement of "Hochberg Diamond and Napoli" does not constitute the practice of law by "Hochberg" "Diamond" or "Napoli." If it did, the respected founders of many Philadelphia law firms would be practicing, and billing, in their graves. The Injunction Opinion's discussion of what constituted unauthorized practice, at pages 18–21, listed many examples of such practice, all of which required "exercise of legal judgment." *Dauphin County Bar*, 351 A.2d at 233 (1976). Allowing one's family name to be used as a part of a fictitious law firm

---

**9.** Hochberg, as managing partner of Haymond Diamond and Napoli (HN & D) in a period *before trial,* engaged in the unauthorized practice of law. Injunction, at 19–20. The court urges Hochberg to read its opinion carefully before continuing his close daily contacts with HN & D attorneys in Pennsylvania to avoid contempt of the court's injunction.

registration is not necessarily the practice of law in Pennsylvania.

■ Whether it constitutes holding oneself out as an attorney under 42 Pa. Cons.Stat.Ann. § 2524(a) is a distinct inquiry. Hochberg is prohibited from doing so "in such a manner as to convey the impression that he is a practitioner of the law ..." *Id.* The court concludes Hochberg did not give the impression *he* was a practitioner when he allowed his name to be used in the HoND–Pa registration, or in advertising the firm name in Pennsylvania.

Hochberg's name, as used in HoND–Pa, does not identify Robert Hochberg as an individual. In Pennsylvania, law firm names need not be composed of practicing, or even living, lawyers, and the ethical rules permit law firm names to be trademarks. *See* Pa. Rule of Prof. Cond. 7.5(b) ("If otherwise lawful a firm may use as, or continue to include in, its name, the names or names of one or more deceased or retired members of the firm or of a predecessor firm in the continuing line of succession."); *see also Id.,* comment. Simply seeing the name "Hochberg" does not suggest the lawyer Robert Hochberg; a family name does not personally identify one person. Personal identification is a necessary part of holding *oneself* out to practice in Pennsylvania.

Should Hochberg place his full name in an advertisement, or on letterhead, or on a firm sign, or in a business card, he acknowledges that would cross the line set by the injunction and by authority. *See Ginsburg,* 11 D & C 2d at 616 (attorney put a sign in his window stating, "Law Offices, Stephen J. Kovrak, Tax Consultant," and engaged in other conduct constituting the practice of law); Penn. Rules of Prof. Cond. 7.5 ("[I]dentification of the lawyers in an office of [a firm with offices in multiple jurisdictions] shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.").

Between these extremes lies a difficult to define middle ground. Lundy would have the court define those further uses of Hochberg's name that violate § 2524 and those that do not. This is inadvisable. There could be infinite variations on what constitutes "holding out." Each variation might be more or less likely to suggest that the named partner is: (1) alive; and (2) practicing where he advertises. No permanent injunction could prophylactically—or rationally—resolve the fact-intensive nature of the many possibilities, and the court declines to deal with what are now no more than future eventualities.

The current injunction will remain in effect. To the extent that Hochberg suggests his *personal involvement* in a Pennsylvania law firm in any media subject to distribution in the Commonwealth without noting his inability to practice here, he would be in contempt of the court's August 31, 2001, Order. Hochberg would have two options: (1) disclaim his ability to practice in Pennsylvania; or (2) be admitted to practice in the Commonwealth. Neither requirement is onerous.

Hochberg may have violated the court's order in another way. His memorandum filed in opposition to this motion attached a business card he states "only indicates that he is licensed in Connecticut." *Mem in Opposition,* at 5. But the card does not state any jurisdictional limitations. The court's order clearly stated that any material subject to distribution in Pennsylvania, including business cards, must state "not licensed to practice in Pennsylvania." If he is using this business card in Pennsylvania, Hochberg should correct this omission and submit proof promptly.

**D. Motion to Intervene by Donald F. Manchel (# 332)**

On November 20, 2001, Manchel, Lundy's former partner in Manchel, Lundy & Lessin ("ML & L"), moved to intervene for the "limited purpose of asserting an interest in the subject matter of this action." *See* F.R.C.P. 24(a) and (b). ML & L dissolved on July 29, 1997, and the respective partners have since engaged in binding arbitration before the Honorable Leon Katz (retired). According to Manchel, the arbitrator has ordered Lundy to pay certain sums to ML & L and Manchel directly. Manchel alleges these sums remain unpaid, and seeks to intervene in this action to assert a claim on monies arising from ML & L said to be variously the property of H & L, Lundy, Haymond, and/or HN & D.

▇▇ In *Pennsylvania v. Rizzo*, 530 F.2d 501 (3d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976), the Court of Appeals enumerated three distinct criteria that a putative intervener is required to establish: (1) his application is timely; (2) he has a sufficient interest in the matter and his interest would be affected by the disposition; and (3) his interest is not adequately represented by the existing parties. *Id.* at 540. Manchel's intervention is untimely, and is not relevant to the subject matter of this action.

▇▇▇ Timeliness is determined by: (1) the stage of the proceedings; (2) prejudice to the parties due to the delay; and (3) the reason for the delay. *See In Re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3d Cir.1982). A motion to intervene after judgment should be denied absent exceptional circumstances. *Id.* Judgment was entered in August, and there are no exceptional circumstances—or at least none brought to the court's attention—to justify Manchel's intervention now. The parties would be severely preju-diced by the addition of new (and totally distinct) claims just as the law firm's assets are marshaled and distributed.

▇▇ The claims Manchel now asserts have existed prior to the filing of this action. To the extent that he was prohibited from raising them until April, 2001, when the arbitrator ruled on the dispute, he could still have intervened in this action well before judgment. The motion is untimely.

Additionally, the *res* of this action is totally distinct from the *res* Manchel claims he must protect. At trial, Haymond argued Lundy rejected an offer to divide the disputed ML & L funds equally so that the distribution of the ML & L fees would not be determined or received until after Lundy dissolved H & L, and he, not the partnership, would receive the fees. *Judgment*, at 19. It was not until November, 1999, after the partnership's dissolution, that Lundy was awarded 55% of the ML & L funds, or $971,255.20 of the $1,765,918.55 in the account on the date of dissolution. The jury agreed that Lundy's actions breached the partnership agreement. *Id.* at 21. To remedy Lundy's breach, the court ordered him to pay to the partnership what it would have received had he accepted the settlement offer before the dissolution of the partnership: $882,959.28, representing fifty percent of the ML & L funds. *Id.* at 23. The court declined to inquire into funds Manchel and Lundy allegedly had withheld from the arbitration account. *Id.* at 23, n. 13.

The sums at issue in this action are damages owed by Lundy, in his personal capacity, for his breach of a contract with Haymond. Manchel claims money allegedly awarded by the arbitrator but not paid by Lundy. These funds are distinct: their only common characteristic is Lundy's al-

leged malfeasance. Marvin Lundy is not the *res* of this action. Manchel has no claim over fees due H & L: if Lundy owes Manchel money in violation of the arbitration award, this action is not the forum for the amount to be determined or distributed.

### III. *Conclusions of Law*

1. Lundy's Motion for a Mistrial based on Haymond's argument post-trial for relief he did not seek before the jury will be rejected because there was no prejudicial misconduct warranting a new trial: (1) Lundy, and the jury, *were* exposed to Haymond's argument before the jury reached its verdict; (2) the court denied this relief; and (3) it is not reasonably probable that the purported misconduct was a reason for the verdict in Haymond's favor.

2. There was no clear error of law or manifest injustice in the court's interpretation of the Agreement.

3. The court did not lack subject matter jurisdiction over the unauthorized practice claim against Hochberg. The issues were not novel, and abstention was not required.

4. Sufficient evidence supported the court's permanent injunction against Hochberg; a new trial is not required to prevent a miscarriage of justice.

5. The doctrine of unclean hands in inapplicable; the public would be harmed if Lundy's complicity in unauthorized practice would permit Hochberg's conduct to continue.

6. Hochberg's present conduct does not justify modification of the court's injunction. The advertisement of the firm name "Hochberg Napoli and Diamond" in Pennsylvania does not itself constitute the practice of law in Pennsylvania by Hochberg, nor does it constitute holding out to practice here. Hochberg may not allow cards, stationary, or signs to circulate in Pennsyl-

vania without noting the limitations on his practice as mandated by the August 31, 2001, Order. Although Lundy's motion to specify will be denied, Hochberg must submit evidence that his business card, stationary, letterhead, and any other relevant documents used in Pennsylvania, comply with the court's order promptly.

7. Donald Manchel's Motion to Intervene will be denied as non-compliant with the requirements of F.R.C.P. 24(a) or (b).

### *ORDER*

AND NOW, this 2nd day of January, 2002, for the reasons stated in the foregoing memorandum, it is **ORDERED** that:

1. Lundy's Motions for a Mistrial, New Trial, or Modification of the Verdict (# 310–1, 310–2, and 310–3) are **DENIED.**

2. Hochberg's Motion for Post–Trial Relief (# 308) is **DENIED.**

3. Lundy's Motion for Specification of Injunctive Relief (# 326) is **DENIED.**

4. Hochberg shall submit to this court evidence that legal documents (including business cards, stationary, letterhead, and advertisements) bearing his full name subject to distribution in Pennsylvania comply with the court's order of August 31, 2001 **PROMPTLY.**

5. Donald Manchel's Motion to Intervene for the Limited Purpose of Asserting an Interest in the Property Which is the Subject Matter of the Action (# 332) is **DENIED.**

6. Final judgment in this action will be entered by the court when the Receiver has submitted a Supplemental Report recommending distribution of the former partnership's assets, and any objections thereto have been decided.

7. All other pending motions remain under advisement.